Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily Hough (SBN 315277)
lhough@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| KAREN BURZDAK, individually and on behalf of all others similarly situated, | Case No.: |
| *Plaintiff*, | **CLASS ACTION COMPLAINT FOR** |
| v. | **(1) Violation of Cal. Bus. & Prof. Code § 17600 *et seq.*; and** |
| UNIVERSAL SCREEN ARTS, INC., an Ohio Corporation, | **(2) Violation of Cal. Bus. & Prof. Code § 17200.** |
| *Defendant*. | |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Karen Burzdak brings this Class Action Complaint and Demand for Jury Trial against Defendant Universal Screen Arts ("Universal"), to stop its practice of deceptively enrolling consumers into a paid and automatically renewing membership program. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief.

**NATURE OF THE ACTION**

1.       Defendant Universal Screen Arts is a "leading" multi-company retailer that owns and operates myriad e-commerce websites and brands including Acorn, Bas Bleu, Daedalus Books,

Signals, Support Plus, and What on Earth.[1]

2.      After a consumer places an order from one of Defendant's websites, they are presented with a free shipping option. Unbeknownst to consumers, however, selecting the free shipping option automatically enrolls them into a 7-day free trial to Universal's VIP Insider membership program that renews every month for $14.95. The VIP Insider program allegedly gives consumer free shipping at any of Universal's retailers as well as cash back benefits on each purchase.

3.      However, when enrolling consumers into the free trial of the VIP Insider membership, Universal fails to clearly and conspicuously disclose the terms of the membership including that there is any charge associated with the membership, let alone that it will automatically renew on a monthly basis.

4.      Once a consumer is entrapped in the membership, cancelling the VIP Insider membership is an intentionally difficult task. When a consumer discovers (if at all) that Universal enrolled them into a paid VIP Insider program, Universal does not offer a timely and easy-to-use mechanism for cancelling the membership, leading to repeat and ongoing unauthorized charges.

5.      Consumers, like Plaintiff Burzdak and the putative Class, have been unknowingly enrolled into a membership program they did not want with no clear way to cancel. As such, Defendant has violated the California Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §17600 *et seq.* and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*

**PARTIES**

6.      Plaintiff Karen Burzdak is a natural person and citizen of the State of California.

7.      Defendant Universal Screen Arts, Inc., is a corporation organized and existing under the laws of Ohio with its principal place of business located at 5581 Hudson Industrial Parkway, Hudson, Ohio 44236.

---

[1]      Our Brands, Universal Screen Arts, Inc., https://www.universalscreenarts.com/our-brands/ (last visited Feb. 23, 2021).

**JURISDICTION AND VENUE**

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than any Defendant, (ii) the amount in controversy exceeds, $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

9.     This Court has personal jurisdiction over Defendant because Defendant conducts business in the State of California.

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the Plaintiff's and the putative Class's claims arose, in a substantial part, in this District.

**COMMON FACTUAL ALLEGATIONS**

**I.     The California Automatic Renewal Law**

11.     The California legislature enacted the California Automatic Renewal Law, Cal. Bus. & Prof. Code, § 17600 *et seq.*, "to end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." *Id.* In enacting the ARL, the California legislature observed:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the 'fine print' on an order or advertisement that the consumer responded to. [2]

12.     To achieve this goal, the ARL makes it unlawful for any business to, among other things, to make an automatic renewal offer or continuous service offer to a consumer in this state to do any of the following:

> (1)     Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is

---

[2]     California Bill Analysis, S.B. 340 Sen., 8/20/2009, https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=200920100SB340.

fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.

(2)    Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

(3)    Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services. (*Id.* §17602(1)-(3)).

13.    According to the ARL, the automatic renewal offer must contain the following disclosure: (1) that the subscription or purchasing agreement will continue until the consumer cancels; (2) the description of the cancellation policy that applies to the offer; (3) the recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known; (4) the length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and (5) the minimum purchase obligation, if any. *Id.* § 17601(b).

14.    Under the ARL the automatic renewal offer must be "clear and conspicuous" which specifically means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, *in a manner that clearly calls attention to the language.*" *Id.* § 17601(c) (emphasis added).

15.    Furthermore, the ARL states that "a consumer who accepts an automatic renewal or continuous service offer online shall be allowed to terminate the automatic renewal or continuous service exclusively online…" *Id.* §17602(c).

1

**II.    Universal Screen Arts Unlawfully Enrolls Consumers Into a "VIP" Program That Renews Every Month.**

2      16.    After a consumer places and finalizes an order on one of Universal's websites, they

3 are presented with an option to "Claim Your **Free Shipping** Refund Now!" The free shipping pop

4 up further states, "to claim your **free shipping,** provide your information below and click **SUBMIT**

5 to join *Signals VIP Insider* today!" (the "Free Shipping page"). *See* <u>Figure 1.</u>

6

7
8
9
10
11
12
13



14      **(Figure 1.)**

15      17.    Once a consumer enters an email address and clicks "SUBMIT," Universal

16 automatically enrolls them into the VIP Insider membership program for a 7-day "free" trial.

17 Universal then begins charging consumers $14.95 every month after the 7-day trial ends.

18      18.    Universal does not ask consumers to provide their credit card or other billing

19 information when claiming "free shipping." As such, consumers do not have an expectation that

20 enrolling into the VIP Insider membership—for the sole purpose of receiving free shipping on their

21 order—would result in a reoccurring charge on their credit or debit card statement.

22      19.    Universal misleads consumers into joining the VIP Insider program by failing to

23 present clear and conspicuous automatic renewal terms on the Free Shipping page. Indeed,

24 Universal fails to disclose—in font that is larger than the surrounding text, in contrasting type, or

25 offset from the surrounded text on the Free Shipping page that would clearly call attention to the

26 terms—that the VIP Insider membership will automatically renew, the amount it will charge to

27 renew the membership, how the consumer will be charged, and how the consumer can cancel the

28 automatic renewal.

20.     Instead, any relevant information appears in a font substantially smaller than other words on the Free Shipping page, not in a contrasting color, and is intentionally designed to *not call attention to itself.*

21.     Once enrolled, attempting to cancel a VIP Insider membership is a difficult and often unsuccessful task. When a consumer finally discovers the unauthorized charges on their bank statement, they cannot simply visit Defendant's website and cancel the membership. Instead, consumers have two options:

        i.      Consumers can call a toll-free number and request a cancellation. As described below, calling Universal's toll-free number does not guarantee that Universal will stop the VIP Insider charge from reoccurring. Some consumers have reported issues reaching Defendant's representative and some complain about being charged despite requesting to cancel.

        ii.     Consumers can create an account on the VIP Insider program website where they can request to cancel their automatically renewing membership. Nonetheless, the VIP Insider website is different and separate from any e-commerce account a consumer may have created to make a purchase from one of Universal's various e-commerce sites. For example, a consumer making a purchase on signals.com will not be able to cancel their membership on that same website. Instead, the consumer must navigate to signalsvipinsider.com—a website they have not previously interacted with when making their initial purchase—and create a new account.

22.     As such, Universal makes it intentionally difficult to cancel the membership online. Consumers would have reasonably expected that an option to cancel a product or service (or make any modifications to their purchase) would be found in their account on a website from which they completed their purchase—and not an entirely different website. Consumers who were unknowingly enrolled into the VIP Insider membership program would not have known to create a separate account in order to cancel an automatically reoccurring charge they never requested in the first place.

III.     **Consumers Complain About Universal's Deceptive Reoccurring Charge.**

23.     Consumers have complained online about Universal's reoccurring $14.95 charge. For example, one consumer complained about the reoccurring charge and the difficulties they faced when attempting to cancel it:

> I ordered one t shirt from this company,now every month they put a $14.95 charge on my credit card. I have spent hours on the phone trying to get to someone to fix this every time I finaly get through to someone they say it's another department and give a new number to call I can never talk to anyone to fix this.I did not sign up for any services with this company. Every month I have to call my bank to remove this charge.[3]

24.     Another consumer who was charged over $538 for the Signal VIP Insider program stated:

> As others have reported, I too realized today that I was enrolled in a "rewards" program costing me $14.95 a month since 2017! I bought one product in 2017 and have never been made aware of the program, recieved anything of value from the program, or been informed of my on going enrollment. I am a senior citizen on a limited income and I never noticed this single charge because it was literally the only charge squeezed in the billing. I don't use my credit card, I only focus on paying it off and today I wondered why, after making payments of $100 to $200 per month didn't seem to be getting me anywhere quickly and that's when I saw it. A single line along with the interest rate and other card info. If I'm correct, at once a month since 2017, they have deducted $538.20 from me unaware. I want a refund because this company knew that what they did would result in people paying them monthly unawares and if they never said anything about it they'd be profiting for years which they have! I called them and cancelled as soon as I noticed this charge and a recording at the beginning of the call mentioned those awaiting refunds to push 1, I'm guessing that's a lot of people's issue with this company. [4]

25.     Consumer complaints further indicate that they never consented to or agreed to Universal's reoccurring charge for VIP Insider:

> I bought a novelty pillow for my daughter for Christmas last year from a online site called Signals.com. The signal.com website, unbenounced to me, signed me up for "a scam" service called Signals VIP Insider. A reoccurring amount of $14.95 was charged to the credit card I used for the purchase for months. I did not sign up for this false service. I don't remember checking a box or even being offered this service at the time of check out. I contacted the service and the person laughed when I mentioned not signing up for the service and I didn't know about the service.

---

[3]     Universal Screen Arts, Inc. | Complaints | Better Business Bureau® Profile, https://www.bbb.org/us/oh/hudson/profile/catalog-shopping/universal-screen-arts-inc-0272-35000112/complaints (last visited Feb. 23, 2021).

[4]     *Id.*

They were happy I got scammed. The Signals VIP Insider website shows businesses such as Walmart, Kohls, Best Buy, Target, etc. that they are supposedly associated with. I researched those businesses websites and none offered or mentioned Signals VIP Insider. There are several websites on the internet addressing this issue but I want MORE DONE. Like the business taken off of the internet completely! We can do better on this issue rather than just having websites where we can complain.[5]

**FACTS SPECIFIC TO PLAINTIFF BURZDAK**

26.  Plaintiff Burzdak placed an order in October 2020 from one of Universal's e-commerce websites called Bas Bleu.

27.  Following this purchase, Universal enrolled Burzdak into the VIP Insider membership program. Burzdak did not wish or intend to be enrolled into Universal's VIP Insider program, and was entirely unaware that she was being enrolled as part of her purchase process. Most importantly, Burzdak did not provide any payment information in connection with the Signal VIP Insider membership program.

28.  Less than 7 days later, Universal placed a $14.95 charge on Burzdak's debit card that automatically renewed for three months. Specifically, Universal deducted $14.95 from Plaintiff's bank account on November 2, 2020, December 2, 2020, and January 4, 2021.

29.  Because any relevant information about the charge was not disclosed in a clear and conspicuous manner, Burzdak did not know that she would be enrolled into an automatically renewing membership.

30.  Burzdak did not see Universal's charges for VIP Insider for approximately three months. Upon the discovery of these charges, Burzdak called Universal to cancel the automatically renewing $14.95 charge. Burzdak was not able to cancel the VIP Insider membership from the website where she placed her initial order.

**CLASS ACTION ALLEGATIONS**

31.  **Class Definition**: Plaintiff Karen Burzdak brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and a Class of similarly situated individuals defined as follows:

All persons in the State of California who were charged for a VIP Insider membership.

[5] *Id.*

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and its officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

32.    **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed an automatically renewing charge on thousands of consumers' accounts who fall into the definition of the Class. Class members can be identified through Defendant's records.

33.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the putative Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    (a)    Whether the Defendant placed an automatically renewing charge on the Class members' accounts;

    (b)    Whether Defendant's automatic renewal offer was clear and conspicuous;

    (c)    Whether Defendant's provided Plaintiff and the Class a cost-effective, timely, and easy-to-use mechanism for cancellation; and

    (d)    Whether Defendant enabled Plaintiff and the Class members to terminate the reoccurring charge exclusively online on its website.

34.    **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class. That is, Plaintiff and the Class members sustained damages as a result of Defendant's

conduct. Plaintiff also has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Class.

35.    **Predominance and Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Class is impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

36.    Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violation of Cal. Bus. & Prof. Code § 17600** *et seq.*
**(On behalf of Plaintiff and the Class)**

37.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

38.    Plaintiff and the Class are "consumers" as contemplated by the ARL because they purchased goods and services from Defendant for personal, family, or household purposes.

39.    Under the ARL, "automatic renewal offer terms" means the following clear and conspicuous disclosures: (1) that the subscription or purchasing agreement will continue until the consumer cancels; (2) the description of the cancellation policy that applies to the offer; (3) the recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known; (4) the length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and (5) the minimum purchase obligation, if any.

40.     Furthermore, the automatic renewal offer must be "clear and conspicuous" which means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." *Id.* § 17601(c).

41.     Defendant's conduct of automatically enrolling Plaintiff and the Class into the VIP Insider program is unlawful for the following reasons:

(a)     Defendant failed to present automatic renewal offer terms in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to a request for consent to the offer, in violation of § 17602(a)(l);

(b)     Defendant charged the consumer's credit card, debit card, or third-party payment account in connection with an automatic renewal without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosures of all automatic renewal offer terms, in violation of § 17602(a)(2);

(c)     Defendant failed to provide a cost-effective, timely, and easy-to-use mechanism for cancellation, in violation of § 17602(b); and

(d)     Defendant failed to terminate the automatic renewal or continuous service exclusively online for a consumer who accepts an automatic renewal or continuous service offer online, in violation of § 17602(c).

42.     Plaintiff and the Class have suffered damages in the form of money wrongfully charged for the VIP Insider membership they did not request and could not easily cancel.

43.     As such, Plaintiff and the Class seek restitution of all amounts paid under the Cal. Bus. & Prof. Code § 17203 in connection with the VIP Insider automatic renewal membership program.

1

**SECOND CAUSE OF ACTION**
**Violation of the Cal. Bus. & Prof. Code § 17200**
**(On Behalf of Plaintiff and the Class)**

2

3    44.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

4    45.    The Unfair Competition Law defines unfair competition as any unlawful, unfair or

5   fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any

6   act prohibited by Chapter 1 of Part 3 of Division 7 of the California Business and Professional

7   Code.

8    46.    In the course of conducting business in California, Defendant committed unlawful,

9   unfair, and/or fraudulent business practices, by:

10    (a)    failing to present automatic renewal offer terms in a clear and conspicuous manner

11   before a subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of

12   an offer conveyed by voice, in temporal proximity, to a request for consent to the offer, in violation

13   of § 17602(a)(l);

14    (b)    charging the consumer's credit card, debit card, or third-party payment account in

15   connection with an automatic renewal without first obtaining the consumer's affirmative consent to

16   an agreement containing clear and conspicuous disclosures of all automatic renewal offer terms, in

17   violation of § 17602(a)(2);

18    (c)    failing to provide a cost-effective, timely, and easy-to-use mechanism for

19   cancellation, in violation of § 17602(b); and

20    (d)    failing to terminate the automatic renewal or continuous service exclusively online

21   for a consumer who accepts an automatic renewal or continuous service offer online, in violation of

22   § 17602(c).

23    47.    Defendant's acts and omissions as alleged herein violate obligations imposed by

24   statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical,

25   oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits

26   attributable to such conduct.

27    48.    Indeed, Defendant's acts and omissions alleged herein were misleading and/or likely

28

1  to deceive the consuming public.

2        49.    Pursuant to § 17203, Plaintiff and the Class members are entitled to restitution of all

3  amounts paid to Defendant in connection with an automatic renewal membership program.

4        50.    Unless enjoined and restrained by this Court, Defendant will continue to commit the

5  violations alleged herein. Pursuant to § 17203, on behalf of the Class and for the benefit of the

6  general public of the State of California, Plaintiff seeks an injunction prohibiting Defendant from

7  continuing their unlawful practices as alleged herein.

8                              **PRAYER FOR RELIEF**

9        WHEREFORE, Plaintiff Karen Burzdak, individually and on behalf of the Class, prays for

10  the following relief:

11        (a)    An order certifying the Class as defined above, appointing Plaintiff Burzdak as the

12  representative of the Class, and appointing her counsel as Class Counsel;

13        (b)    An order declaring that Defendant's actions, as set out above, violate the ARL and

14  UCL;

15        (c)    An injunction requiring Defendant to cease all unlawful activities and enjoining

16  Defendant from placing unauthorized and automatically renewing charges on consumer's bank

17  accounts;

18        (d)    An award of actual damages;

19        (e)    Such other and further relief that the Court deems reasonable and just.

20                              **JURY DEMAND**

21        Plaintiff requests a trial by jury of all claims that can be so tried.

22                                        Respectfully submitted,

23

24                                        **KAREN BURZDAK**, individually and on behalf of
                                          all others similarly situated,

25

26  Dated: March 26, 2021                 By: /s/ Lily E. Hough
                                          *One of Plaintiff's Attorneys*
27
                                          Rafey Balabanian (SBN 315962)
28

CLASS ACTION COMPLAINT                    13

rbalabanian@edelson.com
Lily Hough (SBN 315277)
lhough@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*