MANATT, PHELPS & PHILLIPS, LLP
CHRISTINE M. REILLY (Bar No. 226388)
E-mail: CReilly@manatt.com
JUSTIN JONES RODRIGUEZ (Bar No. 279080)
E-mail: JJRodriguez@manatt.com
KRISTIN E. HAULE (Bar No. 312139)
E-mail: KHaule@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone:   310.312.4000
Facsimile:   310.312.4224

Attorneys for Defendant
UNIVERSAL SCREEN ARTS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KAREN BURZDAK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Universal SCREEN ARTS, INC., an Ohio Corporation,<br><br>Defendant. | No. 3:21-cv-02148-EMC<br><br>**REPLY IN SUPPORT OF DEFENDANT UNIVERSAL SCREEN ARTS, INC.'S MOTION TO STAY CASE PENDING APPEAL**<br><br>Date:        November 18, 2021<br>Time:        1:30 p.m.<br>Ctrm:        5 - 17th Floor<br>Judge:       Edward M. Chen<br><br>Date Action Filed: 3/26/2021 |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

REPLY IN SUPPORT OF
DEFENDANT'S MOTION TO STAY
3:21-CV-02148-EMC

## I.  INTRODUCTION

Universal is likely to succeed on the merits of its appeal of the Order denying Universal's motion to compel arbitration ("Order") because the Order: (1) erroneously incorporates the ARL's heightened "clear and conspicuous" standard into the analysis of whether Plaintiff had inquiry notice that she was agreeing to arbitrate; (2) categorizes Universal's agreement as browsewrap rather than clickwrap (Order at 6) even though Plaintiff was required to click to manifest her assent; (3) applies the more stringent standard for browsewrap to evaluate whether Plaintiff had actual or constructive knowledge (*id.*); and (4) does not weigh the fact that Plaintiff had to affirmatively assent to the terms in its analysis. Plaintiff's opposition is based on an incorrect reading of the Order and applicable law.

Plaintiff asserts that the Order did *not* apply the heightened ARL standard to its analysis. But that assertion ignores both the plain language of the Order and the analysis itself. The Order plainly states that the Court was "require[d] … to consider whether the Terms of Use were clear and conspicuous as that term is used by the California Automatic Renewal Law." Order at 7, n.4.

Plaintiff also incorrectly asserts that the standard for evaluating clickwrap agreements and browsewrap agreements is the same—namely, whether a contract was formed. Plaintiff's view of the law oversimplifies the issue and ignores the body of case law explaining that clickwrap and browsewrap (and modified clickwrap) agreements are each analyzed differently. The incorrect standard was applied here.

Plaintiff's alternative basis for affirming the Order is similarly unavailing. Plaintiff posits that the Order can be affirmed on the alternative basis that the VIP Insider terms do not apply because this lawsuit arises out of her purchase from basbleu.com, not vipinsider.com. That is a red herring, and it conflates the issues. This lawsuit arises out of Plaintiff's enrollment in the automatically-renewing VIP Insider membership program through vipinsider.com, which Plaintiff did visit after her purchase from basbleu.com.

In any event, Universal's appeal raises "serious legal questions" about the proper standard for evaluating "modified clickwrap agreements" like the one at issue, and the extent to which the

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

**Error! Unknown document property name.**

REPLY IN SUPPORT OF
DEFENDANT'S MOTION TO STAY
3:21-CV-02148-EMC

ARL's "clear and conspicuous" standard applies (if at all) to that analysis. Plaintiff contends that district courts' varying interpretations of such agreements are simply individualized factual analyses, but Plaintiff ignores Universal's cited case law explicitly stating that district courts have not been uniform in their interpretations of such agreements; she also ignores the examples Universal provided of similar agreements being treated differently in district courts.

Finally, the balance of the equities favors a stay. In attempting to argue otherwise, Plaintiff ignores Universal's cited authority standing for the propositions that (1) continued litigation expenses *pending the appeal of an order denying a motion to compel arbitration* specifically, and especially the expenses and burden of class discovery that would be entirely unnecessary in *individual* arbitration proceedings, is itself a substantial injury to Universal; and (2) a plaintiff must generally demonstrate a risk of loss of evidence in order to demonstrate a substantial injury to the putative class, which Plaintiff has not done.

For these reasons and the additional reasons stated below and in Universal's motion, this case should be stayed pending Universal's appeal of the order denying its motion to compel arbitration.

## II. THE APPEAL IS LIKELY TO SUCCEED ON THE MERITS

### A. The Order Erroneously Applies the ARL's Heightened "Clear and Conspicuous" Standard to its Analysis of the Arbitration Issue.

Plaintiff contends that the Court did *not* apply the Automatic Renewal Law's heightened "clear and conspicuous" standard to its analysis of the arbitration issue. Opp. at 2-4. The plain language of the Order indicates otherwise. *See* Order at 7, n.4 ("[T]he inquiry notice standard does require the Court to consider whether the Terms of Use were *clear and conspicuous as that term is used by the California Automatic Renewal Law*." (emphasis added)). The Court's analysis also demonstrates it incorrectly applied the heightened standard. For example, the Order's substantive analysis is devoted to distinguishing *Lee v. Ticketmaster, L.L.C.*, 817 F. App'x 393 (9th Cir. 2020) from this case. Order at 8-11, 13-14. In *Lee*, the Ninth Circuit held that the parties formed an agreement to arbitrate even though the hyperlinked terms of use at issue in that case

were presented to the consumer plaintiff in small font and substantially below the button the user was required to click to agree to the terms. *See id.* In its Order, this Court noted Ticketmaster's terms appeared in blue font, whereas Universal's—which appeared in the middle of the screen and directly above the button Plaintiff clicked to agree to the terms—was underlined but not blue. Order at 13. The Court also noted that other text on the screen, such as "Free Shipping" were bolded, in a different color than surrounding text, and/or capitalized. Thus, instead of evaluating whether a reasonable consumer would have had inquiry notice of Universal's Terms, the Court's analysis turned on whether the Terms and language of the agreement were the most prominent, clear, and conspicuous items on Universal's checkout page. That approach reflects the heightened standard in California's Automatic Renewal law, not the inquiry notice standard. *Compare* Cal. Bus. & Prof. Code § 17601(c) (for purposes of the ARL, "[c]lear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language"), *with Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) (enforceability of arbitration agreement hinges on whether the terms are presented in a way "to place a reasonably prudent user on constructive notice"—*i.e.*, inquiry notice). Thus, the Order (1) unambiguously states that the inquiry notice standard requires application of the ARL's clear and conspicuous standard (Order at 7, n.4), then (2) proceeds to apply that standard to Universal's disclosures (*id.* at 8-11, 13-14).

Because the ARL's definition of "clear and conspicuous" is not relevant to the question of whether a consumer had inquiry notice that they were agreeing to arbitrate, Universal is likely to prevail on the merits of its appeal. In any event, this raises a "serious legal question" about the proper standard for evaluating arbitration agreements and the role (if any) of the ARL's heightened "clear and conspicuous" definition in that analysis.

    **B.**    **The Standard for Evaluating Clickwrap Agreements and Browsewrap Agreements is Not the Same.**

Plaintiff also argues the standard for analyzing any type of agreement—whether

clickwrap, browsewrap, or something in between—is whether a contract was formed. Opposition Brief ("Opp") at 2. This oversimplification ignores the substantial case law (1) explaining that courts analyze these two types of agreements differently, and (2) analyzing hybrid agreements like Universal's under a less stringent standard than pure browsewrap agreements. *See, e.g.*, *Lee*, 817 F. App'x at 394 ( "courts often analyze Internet contracts in two groups: 'clickwrap' agreements […] and 'browsewrap' agreements"). Specifically, because clickwrap agreements require the user to expressly manifest assent to terms, and browsewrap agreements do not, clickwrap agreements are typically upheld, whereas the validity of a browsewrap agreement turns on whether the consumer had actual or constructive knowledge of the terms. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (explaining clickwrap agreements require the user to expressly manifest assent to terms, and because browsewrap agreements do not, "the determination of the validity of the browsewrap contract depends on whether the user has actual or constructive knowledge of the website's terms and conditions"); *see also Lee*, 817 F. App'x at 394 (explaining that it is easier to find mutual assent for clickwrap agreements, whereas the validity of a browsewrap contract depends on whether the user has actual or constructive knowledge of the website's terms); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1165 (N.D. Cal. 2016) (clickwrap and browsewrap agreements differ in the way the offeree manifests assent, and "[a]lthough there is no per se rule of validity or invalidity on either end, our Circuit has recognized that *the closer digital agreements are to the clickwrap end of the spectrum, the more often they have been upheld as valid and enforceable*" (emphasis added)); *Savetsky v. Pre-Paid Legal Servs., Inc.*, No. 14-03514 SC, 2015 WL 604767, at *3 (N.D. Cal. Feb. 12, 2015) ("courts generally find that clickwrap agreements are enforceable").

Thus, courts in this circuit use a less stringent standard in evaluating clickwrap agreements than they do for browsewrap agreements; and in the case of a hybrid agreement, the standard decreases in stringency the closer the agreement is "to the clickwrap end of the spectrum." *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d at 1165. Because the Court's Order (1) erroneously incorporates the ARL's heightened "clear and conspicuous"

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

REPLY IN SUPPORT OF
DEFENDANT'S MOTION TO STAY
3:21-CV-02148-EMC

standard into its analysis of whether Plaintiff had inquiry notice that she was agreeing to arbitrate; (2) miscategorizes Universal's agreement as browsewrap (Order at 6), even though Plaintiff was required to click to manifest her assent; (3) applies the browsewrap agreement standard of evaluating whether the website user had actual or constructive knowledge (*id.*); and (4) does not address or weigh the fact that Plaintiff had to affirmatively click to assent to the terms in its analysis. Universal is thus likely to prevail on the merits of its appeal.

In addition, the proper standard for evaluating "modified clickwrap" agreements, like that at issue, raises a "serious legal question" and an opportunity for the Ninth Circuit to resolve a split of authority and inconsistent rulings on the issue. At minimum, the Court was required to analyze the place of Universal's agreement with Plaintiff on the spectrum between browsewrap and clickwrap, and apply the standard with a level of leniency based on that placements. Universal is likely to success on the merits for this reason as well.

### C. No Alternative Basis Supports Affirmance of the Order.

Plaintiff also contends Universal is unlikely to prevail on the merits of its appeal because the Ninth Circuit can affirm on the alternative basis that the arbitration agreement does not "cover the dispute at issue here, which arises out of Ms. Burzdak's visit to and purchase from basbleu.com, not vipinsiderbasbleu.com." Opp. at 3. This argument is a red herring and is not a basis for affirmance. As explained in Universal's reply brief in support of its motion to compel arbitration, and at the hearing on the motion, this lawsuit does not arise from Ms. Burzdak's purchase of merchandise from basbleu.com. Rather, it arises from her subsequent enrollment in the VIP Insider membership program, which automatically renews each month, that was made *through* vipinsiderbasbleu.com. ECF No. 27 at 9-10.  For the avoidance of doubt, the hyperlinked terms presented in connection with this enrollment directed to the VIP Insider terms, not the Bas Bleu terms. *Id.* at 10 (citing Radigan Decl. Ex. 1). In any event, the Bas Bleu terms of service *also* have a mandatory arbitration provision. *See* https://www.basbleu.com/info/termsofuse.hzml. Thus, this argument does not undermine Universal's likely success on the merits of its appeal.

### III. UNIVERSAL'S APPEAL RAISES SERIOUS LEGAL QUESTIONS.

Plaintiff also argues Universal's appeal does not raise serious legal questions for two reasons: (1) the Court did not apply the heightened "clear and conspicuous" standard to its analysis; and (2) district courts' varying interpretations of websites does not amount to a "split of authority." Both arguments fail.

First, as discussed above, the Court expressly stated that it considered the ARL's "clear and conspicuous" standard when analyzing the arbitration agreement, and it also applied that definition to its analysis. The first argument thus fails for the same reasons discussed above.

Second, district courts' varying interpretations of online arbitration agreements does not merely reflect an individualized factual inquiry as Plaintiff incorrectly suggests. Rather, as the case law cited by Universal repeatedly acknowledges, courts have not been uniform in their treatment of clickwrap and browsewrap agreements, resulting in authorities being "all over the map" regarding what features are sufficient to provide inquiry notice. ECF No. 44 at 11-12 (citing *Weimin Chen v. Sierra Trading Post, Inc.*, No. 2:18-cv-1581-RAJ, 2019 WL 3564659, at *3 (W.D. Wash. Aug. 6, 2019) and *In re Ring LLC Priv. Litig*, CV1910899MWFRAOX, 2021 WL 2621197, at *5 (C.D. Cal. June 24, 2021). Moreover, Universal provided examples of websites that look very similar to one another being treated very differently. *See id.* (collecting cases). Because of the varied interpretation of agreements, a more standardized guidance from the Ninth Circuit would help provide clarity to businesses that seek to enter arbitration agreements with their online customers.

### IV. THE BALANCE OF EQUITIES FAVORS A STAY.

Plaintiff raises five arguments that the balance of the equities does not favor a stay: (1) incurring litigation expenses is not an irreparable harm; (2) Universal would incur discovery costs in any forum; (3) delay constitutes a substantial injury to Plaintiff; (4) the putative class continues to suffer ongoing financial hardships; and (5) the federal policy favoring arbitration, by itself, does not require a stay. These arguments all fail.

First, Plaintiff cites the general rule, that incurring litigation expenses is not an irreparable

harm (Opp. at 5), but ignores Universal's cited authority explaining that where those litigation expenses are incurred pending an appeal of an order refusing to compel arbitration, as is the case here, such expenses *do* constitute an irreparable harm that warrants a stay. *See* Mot. at 13-14 (citing *Pokorny v. Quixtar Inc.*, No. 07-00201 SC, 2008 WL 1787111, at *2 (N.D. Cal. Apr. 17, 2008); *Eberle v. Smith*, No. 07-cv-0120 W WMC, 2008 WL 238450, at *2 (S.D. Cal. Jan. 29, 2008); and *Alascom, Inc. v. ITT North Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984)). Plaintiff failed to respond to this authority.

Second, and contrary to Plaintiff's assertion, the Universal would not bear the same discovery costs in another forum. *See* Opp. at 5. Notably, the arbitration agreement at issue in this case requires Plaintiff to bring her claims in *individual* arbitration proceedings. *See* Radigan Decl., ECF No. 20-1, ¶ 10 and Ex. 3. Thus, if it is determined that Plaintiff agreed to the terms and arbitration provision, there will be no class discovery at all. Indeed, Plaintiff's own authority provides that a stay is appropriate "when the trial date approaches *or if discovery were burdensome*." *Bradberry v. T-Mobile USA, Inc.*, No. 06-cv-6567, 2007 WL 2221076, at *4 (N.D. Cal. Aug. 2, 2007) (emphasis added). Requiring Universal to engage in costly and burdensome class-wide discovery that may prove to be entirely unnecessary would irreparably harm Universal. Plaintiff fails to respond to this point as well.

Third, as explained by the authority Universal cited in its motion, and contrary to Plaintiff's assertion in opposition, mere delay does not constitute a substantial injury; rather, a plaintiff must generally demonstrate that evidence would be lost. *See* Mot. at 14 (citing *Ward v. Estate of Goossen*, No. 14-CV-03510-THE, 2014 WL 7273911, at *4 (N.D. Cal. Dec. 22, 2014); *Ontiveros v. Zamora*, no. CIV S-08-567 LKK, 2013 WL 1785891, at *5 (E.D. Cal. Apr. 25, 2013); *see also* Opp. at 6 (citing *Bradberry*, 2007 WL 2221076, at *4). Indeed, Plaintiff's own authority found a substantial injury to Plaintiff, not because of mere delay, but because there was a risk of loss of evidence. *Bradberry*, 2007 WL 2221076, at *4. But Plaintiff does not (and cannot) allege any evidence would be lost in this case. Thus, she has not demonstrated a stay would harm her or the putative class in any way.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

REPLY IN SUPPORT OF
DEFENDANT'S MOTION TO STAY
3:21-CV-02148-EMC

Fourth, the case law Plaintiff cites in support of her argument that the putative class continues to suffer ongoing financial harm is highly distinguishable. *See* Opp. at 6-7. *Vasquez v. Libre by Nexus, Inc.*, involved immigration detainees who were being forced to continue to make payments on their ankle monitors. No. 17-cv-00755, 2018 WL 9868570, at *3 (N.D. Cal. Nov. 20, 2018). The detainees also provided declarations and deposition testimony demonstrating they were undergoing extreme financial hardships. For example, one detainee had to collect cans on the street and sell them to pay for his monthly living expenses. *Id.* Another plaintiff testified her husband "made a lot of sacrifices" in order to make the GPS ankle monitor payments. *Id.* In light of the extreme financial hardship plaintiffs and the putative class were experiencing and the fact that the ankle monitor payments were compulsory, the court found the continued monetary damages constituted an irreparable harm. *Id.* The *Vasquez* court also noted the transitory circumstance of the putative class members meant there was a risk of loss of evidence. *Id.* By contrast, here, continued enrollment in the VIP Insider membership program is not compulsory; each putative class member is free to cancel their membership at any time, to request a refund, or even to initiate their own lawsuit or arbitration proceeding. Moreover, Plaintiff has provided no evidence whatsoever suggesting that this putative class is particularly financially vulnerable or otherwise experiencing extreme financial hardships, like the immigrant detainee putative class in *Vasquez.*

Finally, Plaintiff argues that the federal policy favoring arbitration alone is insufficient to warrant a stay, but her case law is again highly distinguishable. *Martinez-Gonzalez v. Elkhorn Packing Co., LLC* involved a wage and hour class action brought by agricultural laborers. No. 18-cv-05226-EMC, 2020 WL 733228 (N.D. Cal. Feb. 13, 2020). Notably, the transient nature of the putative class created a substantial risk that evidence would be lost. *Id.* at *3. In any event, the court *did* grant a partial stay of that case, staying the filing of class certification and dispositive motions as well as trial, and permitting limited discovery focused on preserving relevant documents and testimony. *Id.* By contrast, here, Plaintiff has not argued that any evidence will be lost, nor has she countered Universal's authority that continued litigation expenses, and especially

class discovery related litigation expenses during the pendency of its appeal of the Order denying its motion to compel arbitration is an irreparable harm. Thus, the balance of the equities weighs in favor of a stay.

## V. CONCLUSION

Universal respectfully requests this Court issue an order staying this case during the pendency of the appeal of the Court's Order denying Universal's motion to compel arbitration.

Dated: October 27, 2021

MANATT, PHELPS & PHILLIPS, LLP

By: /s/ Kristin E. Haule
Christine M. Reilly
Justin Jones Rodriguez
Kristin E. Haule
Attorneys for Defendant
UNIVERSAL SCREEN ARTS, INC.

Manatt, Phelps & Phillips, LLP
Attorneys at Law
Los Angeles

- 9 -

REPLY IN SUPPORT OF
DEFENDANT'S MOTION TO STAY
3:21-CV-02148-EMC