1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN BURZDAK,<br><br>                    Plaintiff,<br><br>        v.<br><br>UNIVERSAL SCREEN ARTS, INC.,<br><br>                    Defendant. | Case No.  21-cv-02148-EMC<br><br>**ORDER DENYING DEFENDANT'S<br>MOTION TO STAY**<br><br>Docket No. 44 |

    Plaintiff Karen Burzdak has filed a class action against Defendant Universal Screen Arts, Inc. ("USA"), asserting that it has a "practice of deceptively enrolling consumers into a paid and automatically renewing membership program."  Compl. at 1.  Previously, USA moved to compel arbitration of Ms. Burzdak's claims.  The Court denied the motion.  Now pending before the Court is USA's motion to stay proceedings pending its appeal of the Court's arbitration order.

### I.        FACTUAL & PROCEDURAL BACKGROUND

A.    Complaint

    In her complaint, Ms. Burzdak alleges as follows.

    USA is a "multi-company retailer that owns and operates myriad e-commerce websites and brands including Acorn, Bas Bleu, Daedalus Books, Signals, Support Plus, and What on Earth."  Compl. ¶ 1.  After a consumer places and finalizes an order from one of USA's websites, she is presented with a free shipping option.  *See* Compl. ¶¶ 2, 16.  For example:

///

///

///

Compl. ¶ 16.  "[S]electing the free shipping option automatically enrolls [consumers] into a 7-day free trial to [USA's] VIP Insider membership program that renews every month for $14.95." Compl. ¶ 2.  Although there is text on the website about the VIP Insider membership program, the free trial, the automatic renewal, and the cost thereafter, it is not clear and conspicuous.  *See* Compl. ¶ 19.

In addition, Ms. Burzdak maintains that cancelling the VIP Insider membership is difficult. A consumer cannot "simply visit [the] website [where she made the purchase] and cancel the membership."  Compl. ¶ 21.  Instead, a consumer can cancel the membership online only if she first creates an account with a different website (*e.g.*, signalsvipinsider.com).  *See* Compl. ¶ 21(ii). Also, although consumers can call a toll-free number to request cancellation, "[s]ome consumers have reported issues reaching [a] representative and some complain about being charged despite requesting to cancel."  Compl. ¶ 21(i).  *See, e.g.*, Compl. ¶ 23 (discussing a complaint made about trying to cancel by phone).  Because USA "does not offer a timely and easy-to-use mechanism for cancelling the membership," consumers have suffered "repeat and ongoing unauthorized charges." Compl. ¶ 4.

United States District Court
Northern District of California

1    With respect to Ms. Burzdak specifically, she made a purchase through Bas Bleu (one of

2 USA's e-commerce websites) in October 2020.  *See* Compl. ¶ 26.  After she made the purchase,

3 she responded to the pop-up box and enrolled in the VIP Insider membership program.  She did

4 not intend to be enrolled in the program and was not aware that she was enrolled "as part of her

5 purchase process."  Compl. ¶ 27.  Seven days after her purchase, USA charged Ms. Burzdak's

6 debt card $14.95 for the program.  The deduction was automatically made for three months –

7 November 2020, December 2020, and January 2021.  *See* Compl. ¶ 28.  Ms. Burzdak did not see

8 the charges for about three months.  When she discovered them, she called USA immediately to

9 cancel the membership.  *See* Compl. ¶ 30.

10    Based on, *inter alia*, the above allegations, Ms. Burzdak alleges a violation of California

11 Business & Professions Code § 17200.  Included in this claim is an allegation that USA has

12 engaged in an unlawful business practice because its conduct constitutes a violation of California's

13 Automatic Renewal Law, codified at California Business & Professions Code § 17600.  *See, e.g.*,

14 Cal. Bus. & Prof. Code § 17602(a) (providing that "[i]t shall be unlawful for any business that

15 makes an automatic renewal offer . . . to a consumer" to, *e.g.*, "[f]ail to present the automatic

16 renewal offer terms . . . in a clear and conspicuous manner before the subscription or purchasing

17 agreement is fulfilled and in visual proximity . . . to the request for consent to the offer").  Ms.

18 Burzdak seeks to represent a class defined as follows: "All persons in the State of California who

19 were charged for a VIP Insider membership."  Compl. ¶ 31.

20 B.    Motion to Compel Arbitration

21    USA moved to compel arbitration of the case in June 2021.  *See* Docket No. 20 (motion).

22 According to USA, Ms. Burzdak agreed to arbitration because, when she was presented with the

23 pop-up screen below, she submitted her email address – thereby agreeing to the Terms of Use

24 ///

25 ///

26 ///

27 ///

28 ///

1  which included an arbitration provision.



13      In August 2021, the Court denied the motion, holding that "USA's pop-up screen did not

put a reasonably prudent website user on inquiry notice of the Terms of Use and, therefore, Ms.

Burzdak cannot be bound by the Terms of Use which contain the arbitration provision."  Docket

No. 37 (Order at 14).

    USA subsequently appealed the arbitration decision to the Ninth Circuit.  *See* Docket No.

38 (notice of appeal, filed in September 2021).  USA now asks the Court to stay proceedings

pending its appeal of the Court's arbitration order.

## II.    DISCUSSION

    In *Yeomans v. World Financial Group Insurance Agency, Inc.*, No. 19-cv-00792-EMC,

2021 U.S. Dist. LEXIS 52226 (N.D. Cal. Mar. 19, 2021),[1] this Court recently articulated the legal

standard as to whether there should be the stay of an arbitration order pending appeal in

> "[T]he Ninth Circuit has held that a district court has discretion to
> decide whether to grant a stay." In *Britton*, the Ninth Circuit
> described the question whether to stay a case pending appeal of a
> denial of a motion to compel arbitration as "a proper subject for the

---

[1] The Ninth Circuit recently affirmed the Court's underlying order denying the defendant's motion
to compel arbitration.  *See Yeomans v. World Fin. Grp. Ins. Agency*, No. 20-16937, 2021 U.S.
App. LEXIS 34067 (9th Cir. Nov. 17, 2021).

United States District Court
Northern District of California

4

exercise of discretion by the trial court."

"Courts generally consider four factors when determining whether to grant a stay pending the appeal of a civil order: (1) the likelihood of the moving party's success on the merits; (2) whether the moving party will be irreparably injured if a stay is not granted; (3) whether a stay will substantially injure the opposing party; and (4) the public interest."

With respect to the first factor, a party "need not demonstrate that it is more likely than not that they will win on the merits." A stay may be issued if the moving party establishes that it "has a substantial case – a case which raises serious legal questions," provided "that the balance of hardship tips sharply in its favor."

For a legal question to be "serious," it must be a "question going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." "In the Ninth Circuit, serious legal questions often concern constitutionality." When it comes to cases dealing with enforcement of arbitration agreements, courts have also "found that a serious legal question was raised when the Supreme Court had granted certiorari . . . [and when] the appeal asked the Ninth Circuit to resolve a split in authority."

*Id.* at *6-8.[2]

A.   <u>Likelihood of Success on the Merits/Serious Legal Questions</u>

USA has made several arguments as to why it is likely to succeed on the merits, or why there are at least serious legal questions, but none is persuasive.

For example, USA argues that the Court improperly characterized its Terms of Use as a browsewrap agreement when it was really more like a clickwrap or modified clickwrap agreement. It is true that the Court noted at one point that USA's Terms of Use were "similar" to a browsewrap agreement. Docket No. 37 (Order at 6). But the Court did not state that the Terms of Use were *in fact* a browsewrap agreement. Indeed, the Court expressly noted what the difference between a browsewrap and clickwrap agreement is. *See* Docket No. 37 (Order at 6 n.3) ("A browsewrap agreement differs from a clickwrap agreement – the latter requiring a user to click a

---

[2] At the hearing on the motion to stay, USA argued for the first time that this Court should stay proceedings because a party in a different case has filed a petition with the Supreme Court, asking it to decide whether an appeal of an order on a motion to compel arbitration automatically divests the lower court of jurisdiction (*i.e.*, the lower court has no discretion as to whether to stay proceedings pending appeal). *See PeopleConnect, Inc. v. Knapke*, No. 21-725 (U.S.) (petition filed on November 12, 2021). This argument is now moot. As Ms. Burzdak points out, on November 23, 2021, the parties in *Knapke* jointly stipulated to a dismissal of the petition.

United States District Court
Northern District of California

box indicating that the user agrees to the terms of the agreement.  *See Nguyen*, 763 F.3d at 1175-76 (noting that, with clickwrap agreements, 'website users are required to click on an "I agree" box after being presented with a list of terms and conditions of use'; in contrast, with browsewrap agreements, 'a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen').").  To the extent there may be any confusion from its prior order, the Court confirms that it does not find USA's Terms of Use is a browsewrap agreement.  Rather, the Terms of Use are neither a "pure" browsewrap agreement nor a "pure" clickwrap agreement but rather something in between.

Second, USA contends that, however the Court characterized USA's Terms of Use, the Court applied "the wrong legal standard and failed to give appropriate weight to the fact that Ms. Burzdak was required to provide her affirmative assent to the hyperlinked terms."  Mot. at 2.  USA seems to predicate this argument based on the Court's statement that, under Ninth Circuit law, courts generally enforce *browsewrap* agreements where "(1) the website user had actual knowledge of the agreement or (2) the website puts a reasonably prudent website user on inquiry notice of the terms of the agreement."  Docket No. 37 (Order at 6).  But USA ignores the larger context in which this statement was made.  The larger context, as explained in the order, is as follows:

> Although Ms. Burzdak does not dispute that the FAA governs, she challenges USA's contention that the parties had an agreement to arbitrate.  Whether there was an agreement to arbitrate is a matter of contract formation.  The FAA does not govern this question of contract formation.  **Instead, contract formation is governed by state law.**  As to which state's law governs on the issue of contract formation, Ms. Burzdak contends that California law applies.  USA suggests that the governing law is either that of California or Ohio, but also indicates that there is no material difference between the two, at least with respect to contract formation. Therefore, as a practical matter, the Court focuses on California law alone.
>
> **In the instant case, whether Ms. Burzdak agreed to arbitrate depends, in the first instance, on whether she agreed to the Terms of Use (which contain the arbitration clause).** The Ninth Circuit has noted that, as a general matter, courts enforce browsewrap agreements (similar to the agreement at issue in the instant case) where (1) the website user had actual knowledge of the agreement or (2) the website puts a reasonably prudent website user on inquiry notice of the terms of the agreement.  *See Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1176-77 (9th Cir. 2014).  **This**

United States District Court
Northern District of California

1

2

3

**is consistent with California law.  *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014) (noting that, under California law, "'[a]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious'").**

4

Docket No. 37 (Order at 6) (footnotes omitted; bold added).  The key is how conspicuous are the

5

contractual provisions.

6

        This Court explained its analysis was consistent with the Ninth Circuit's approach in *Lee v.*

7

*Ticketmaster*, 817 Fed. Appx. 393 (9th Cir. 2020), where the court was presented with a modified

8

clickwrap agreement.  *See id.* at 394 (stating that "Ticketmaster's Terms of Use do not constitute a

9

browsewrap agreement because they are not merely posted on Ticketmaster's website at the

10

bottom of the screen [but] the Terms do not constitute a true pure-form clickwrap agreement

11

[either] as California courts have construed it (because Ticketmaster does not require users to click

12

a separate box indicating that they agree to its Terms)").  The Ninth Circuit looked to *Knutson* as

13

well as browsewrap agreement case law in determining that "Ticketmaster's website provided

14

sufficient notice for constructive assent, and therefore, there was a binding arbitration agreement

15

between Lee and Ticketmaster."  *Id.*

16

        Finally, USA asserts that the Court improperly decided the arbitration issue by applying

17

the "clear and conspicuous" standard used to evaluate whether there has been a violation of the

18

Automatic Renewal Law.  This is an improper characterization of the Court's order.  The Court's

19

order stated as follows in footnote 4 after citing to, *inter alia*, *Knutson*:

20

21

22

23

24

25

26

27

28

        In its reply brief, USA contends that Ms. Burzdak improperly conflates the above inquiry notice standard with the substantive standard in determining whether there has been a violation of the California Automatic Renewal Law.  *See* Reply at 1, 4*; see also* Cal. Bus. & Prof. Code § 17602(a) (providing that it is unlawful for a "business that makes an automatic renewal offer or continuous service offer to a consumer" to "[f]ail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer") (emphasis added).  Although the Court is not unsympathetic to USA's implicit concern here – *i.e.*, that the decision on the motion to compel arbitration will impact the substantive merits of the case – the inquiry notice standard does require the Court to **consider** whether the Terms of Use were clear and conspicuous **as that term is used** by the California Automatic Renewal Law.

United States District Court
Northern District of California

1  Docket No. 37 (Order at 7 n.4) (emphasis added).  Under the Automatic Renewal Law, "'[c]lear

2  and conspicuous' . . . means in larger type than the surrounding text, or in contrasting type, font,

3  or color to the surrounding text of the same size, or set off from the surrounding text of the same

4  size by symbols or other marks, in a manner that clearly calls attention to the language."  Cal. Bus.

5  & Prof. Code § 17601(c).  The factors examined under the California Automatic Renewal Law,

6  though not dispositive, may properly be "considered" in assessing the conspicuousness of the

7  provision.  To the extent USA suggests that a court should not consider such factors as size of type

8  and contrasting type in assessing whether a reasonably prudent person was on constructive/inquiry

9  notice (*see* Reply at 3), such suggestion would not be consistent with Ninth Circuit authority.

10  B.    Injury if Stay Granted v. Injury if Stay Denied

11        USA argues that, if a stay is denied, it will be irreparably harmed because it "would be

12  required to invest significant resources engaging in class discovery to which Ms. Burzdak would

13  not otherwise be entitled and to defend itself against class claims that are ultimately not at issue if

14  [USA] prevails on appeal."  Mot. at 12-13.  But any such harm can be alleviated if the Court were

15  to defer class discovery and class certification and have the parties focus first on discovery that

16  would likely be produced for arbitration.  Discovery into Ms. Burzdak's circumstances and USA's

17  policies/practices would be permissible under the bifurcated approach.[3]

18  C.    Public Interest

19        This factor does not weigh in USA's favor to the extent it has a weak position on the

20  likelihood of success on the merits.

21                        **III.    CONCLUSION**

22        Taking into account the factors above, the Court denies USA's motion to stay proceedings

23  pending appeal.  That being said, it shall give USA some relief, specifically, by staging discovery

24  so that the initial focus in the case is on Ms. Burzdak's claims specifically and USA's

25  policies/practices across its websites and deferring for now class certification discovery.  After the

26

27  ───────────────────
    [3] At the hearing, Ms. Burzdak argued that, regardless of arbitration, she still has a claim for public
28  injunctive relief which must be litigated.  The Court does not address this argument as it was not
    raised in the papers.

parties complete this phase of discovery, the Court will revisit whether discovery should proceed

on to, *e.g.*, class claims considering, *inter alia*, the status of USA's appeal.

This order disposes of Docket No. 44.

**IT IS SO ORDERED**.

Dated: November 30, 2021

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

9