Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Yaman Salahi (SBN 288752)
ysalahi@edelson.com
P. Solange Hilfinger-Pardo (SBN 320055)
shilfingerpardo@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Attorneys for Plaintiff and the Settlement Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KAREN BURZDAK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSAL SCREEN ARTS, INC., an Ohio corporation,<br><br>Defendant. | CASE NO.: 3:21-cv-02148-EMC<br><br>**FILED UNDER SEAL**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN SUPPORT OF PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT**<br><br>Date: May 4, 2023<br>Time: 1:30 PM<br>Judge: Edward M. Chen<br>Courtroom: 5, 17th Floor |

**TABLE OF CONTENTS**

I.     FACTUAL AND PROCEDURAL BACKGROUND ...............................................2

    A.     Plaintiff's Allegations...........................................................................................2

    B.     Defendant's Motion to Compel Arbitration and Motion to Dismiss......................4

    C.     Settlement Negotiations .........................................................................................4

II.    SUMMARY OF SETTLEMENT TERMS ......................................................................5

    A.     Settlement Class .....................................................................................................5

    B.     Settlement Fund......................................................................................................6

    C.     Allocation ...............................................................................................................6

    D.     Prospective Relief...................................................................................................6

    E.     Payment of Settlement Notice and Administrative Costs ......................................6

    F.     Payment of Attorney's Fees, Costs, and Service Award........................................7

    G.     Release of Liability ................................................................................................7

III.   THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT
       CLASS .............................................................................................................................7

    A.     The proposed Settlement Class is sufficiently numerous.......................................8

    B.     Common Questions Predominate Over Individual Issues.......................................8

    C.     Ms. Burzdak Is Typical of the Proposed Settlement Class ..................................10

    D.     Ms. Burzdak and Her Attorneys Are Adequate Representatives of the
         Proposed Settlement Class ...................................................................................11

    E.     Class Treatment Is Superior to the Alternatives..................................................12

III.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL .........13

    A.     Ms. Burzdak and Proposed Class Counsel Adequately Represented the
         Class .....................................................................................................................13

    B.     The Settlement Was Negotiated at Arm's Length and There Are No Indicia
         of Collusion ..........................................................................................................14

    C.     The Relief Obtained Is Meaningful and Significant Compared to Similar
         Settlements ............................................................................................................17

    D.     The Settlement treats Class Members equitably relative to each other................19

IV.    THE PROPOSED NOTICE COMPLIES WITH DUE PROCESS AND RULE
       23 ....................................................................................................................................20

V.     CONCLUSION ...............................................................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Akaosugi v. Benihana Nat. Corp.*,
    282 F.R.D. 241 (N.D. Cal. 2012) ................................................................. 8

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................ 12

*Beyer v. Symantec Corp.*,
    333 F. Supp. 3d 966 (N.D. Cal. 2018) ....................................................... 9

*Cmty. Resources for Indep. Living v. Mobility Works of Cal., LLC*,
    533 F. Supp. 3d 881 (N.D. Cal. 2020) ..................................................... 15

*Coinbase, Inc. v. Bielski*,
    No. 22-105 (U.S.) ..................................................................................... 4

*Cottle v. Plaid, Inc.*,
    340 F.R.D. 356 (N.D. Cal. 2021) ............................................... 11, 13, 16

*Doe v. Neopets, Inc.*,
    No. 15-cv-8395-DMG (PLAx), 2016 WL 7647684 (C.D. Cal. Feb. 22, 2016) ............... 10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) .................................................................................. 8

*Evans v. Zions Bancorp., N.A.*,
    No. 2:17-CV-01123 WBS DB, 2022 WL 16815301 (E.D. Cal. Nov. 8, 2022) ............... 20

*Gumm v. Ford*,
    No. 5:15-cv-41-MTT, 2019 WL 479506 (M.D. Ga. Jan. 17, 2019) ................. 14

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) .............................................................. 10, 11

*Harrison v. Bank of Am. Corp.*,
    No. 19-CV-00316-LB, 2021 WL 5507175 (N.D. Cal. Nov. 24, 2021) ............. 18

*In re Bluetooth Headset Products Liability Litigation*,
    654 F.3d 935 (9th Cir. 2011) .............................................................. 13, 15

*In re Facebook Biometric Info. Privacy Litig.*,
    No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022) ............................. 20

*In re LinkedIn User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) ............................................................ 16

*In re MacBook Keyboard Litig.*,
　　No. 5:18-CV-02813-EJD, 2022 WL 17409738 (N.D. Cal. Dec. 2, 2022) ........................ 19

*In re MyFord Touch Consumer Litig.*,
　　No. 13-cv-03072-EMC, 2018 WL 3646895 (N.D. Cal. Aug. 1, 2018)............................... 9

*In re Omnivision Techs., Inc.*,
　　559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................................ 20

*In re Online DVD-Rental Antitrust Litigation*,
　　779 F.3d 934 (9th Cir. 2015) ............................................................................................ 21

*In re Snap Inc. Securities Litig.*,
　　No. 2:17-CV-0367-SVW, 2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ........................... 14

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
　　445 F. Supp. 3d 508 (N.D. Cal. 2020) .............................................................................. 20

*Juarez v. Social Finance, Inc.*,
　　No. 20-CV-03386-HSG, 2022 WL 17722382 (N.D. Cal. Dec. 15, 2022) ................. 11, 20

*Kissel v. Code 42 Software, Inc.*,
　　No. SACV151936-JLS, 2017 WL 10560526 (C.D. Cal. Oct. 4, 2017) ...................... 1, 14

*Korea Supply Co. v. Lockheed Martin Corp.*,
　　29 Cal. 4th 1134 (2003) ................................................................................................... 17

*Leyva v. Medline Indus. Inc.*,
　　716 F.3d 510 (9th Cir. 2013) ............................................................................................ 13

*Linney v. Cellular Alaska P'ship*,
　　151 F.3d 1234 (9th Cir. 1998) .......................................................................................... 14

*Luz Bautista-Perez v. Juul Labs, Inc.*,
　　No. 20-CV-01613-HSG, 2022 WL 307942 (N.D. Cal. Feb. 2, 2022) ....................... 15, 16

*Mazza v. Am. Honda Motor Co., Inc.*,
　　666 F.3d 581 (9th Cir. 2012) ............................................................................................ 10

*Nichols v. Noom, Inc.*,
　　No. 20-cv-03677-KHP, 2022 WL 2705354 (S.D.N.Y. July 12, 2022) ........................ 2, 14

*O'Connor v. Uber Techs., Inc.*,
　　No. 13-CV-03826-EMC, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ........................ 13

*Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
　　688 F.2d 615 (9th Cir. 1982) ............................................................................................ 18

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
        31 F.4th 651 (9th Cir. 2022) ................................................................................................ 10

*Roes, 1-2 v. SFBC Mgmt., LLC*,
        944 F.3d 1035 (9th Cir. 2019) ............................................................................................. 15

*Roz v. Nestle Waters N. Am., Inc.*,
        No. 2:16-CV-4418-SVW, 2017 WL 6942661 (C.D. Cal. Dec. 6, 2017) ........................ 18

*Schneider v. Chipotle Mexican Grill*,
        336 F.R.D. 588 (N.D. Cal. 2020) ........................................................................................ 20

*Silber v. Mabon*,
        18 F.3d 1449 (9th Cir. 1994) ............................................................................................... 21

*Staton v. Boeing Co.*,
        327 F.3d 938, 963 (9th Cir. 2003) ...................................................................................... 16

*Taafua v. Quantum Glob. Techs., LLC*,
        No. 18-CV-06602-VKD, 2020 WL 4732342 (N.D. Cal. Aug. 14, 2020) ...................... 19

*Turnier v. Bed Bath & Beyond Inc.*,
        No. 20-CV-00288-L-MSB, 2021 WL 4209473 (S.D. Cal. Sept. 16, 2021) ................... 18

*Vaquero v. Ashley Furniture Indus., Inc.*,
        824 F.3d 1150 (9th Cir. 2016) ............................................................................................. 10

*Vianu v. AT&T Mobility LLC*,
        No. 19-CV-03602-LB, 2022 WL 16823044 (N.D. Cal. Nov. 8, 2022) .......................... 15

*Vizcaino v. Microsoft Corp.*,
        97 F.3d 1187 (9th Cir. 1996) ............................................................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
        564 U.S. 338 (2011) ................................................................................................................ 8

**Statutes**

Cal. Bus. & Prof. Code § 17601 ....................................................................................................... 9, 10

Cal. Bus. & Prof. Code § 17602 ......................................................................................................... 8, 9

Cal. Bus. & Prof. Code § 17603 ............................................................................................................. 9

**Rules**

Fed. R. Civ. P. 23(e) ...................................................................................................................... *passim*

**Miscellaneous Authority**

United States District Court for the Northern District of California, *Procedural Guidance for Class Action Settlements* (Aug. 4, 2022) § 1 ........................................................................*passim*

4 Newberg and Rubenstein on Class Actions § 13 (6th ed.) .................................................... 7, 15

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on May 4, 2023, at 1:30 p.m., or at such other time as may be set by the Court, Plaintiff Karen Burzdak will appear, through counsel, before the Honorable Edward M. Chen or any Judge sitting in his stead, in Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, and then and there, respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant preliminary approval of a proposed class action settlement reached between Plaintiff and Defendant Roblox Corporation.

Plaintiffs' motion is based upon this Notice, the Memorandum of Points and Authorities filed herewith, the exhibits attached thereto, including the Parties' proposed class action settlement agreement, the Declaration of Yaman Salahi filed simultaneously herewith, and the record in this matter, along with any oral argument that may be presented to the Court and evidence submitted in connection therewith.

Respectfully Submitted,

KAREN BURZDAK, individually and on behalf of all other similarly situated,

Dated: March 27, 2023

By: */s/ Yaman Salahi*

Rafey Balabanian SBN 315962
rbalabanian@edelson.com
Yaman Salahi (SBN 288752)
ysalahi@edelson.com
P. Solange Hilfinger-Pardo (SBN 320055)
shilfingerpardo@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Attorneys for Plaintiff Karen Burzdak
and the Putative Class*

Plaintiff Karen Burzdak seeks approval of her class action settlement agreement with Defendant Universal Screen Arts, Inc.  Universal operates numerous e-commerce brands, including Acorn, Bas Bleu, Daedalus Books, Signals, Support Plus, and What On Earth.  When customers like Ms. Burzdak complete an order with these brands, they are presented with an allegedly misleading "free shipping" offer.  Ms. Burzdak alleged that, unbeknownst to customers, when they accept the "free shipping" offer, they are enrolled in a subscription program called "VIP Insider Membership" with a recurring monthly fee.  Ms. Burzdak allegedly fell victim to this unwitting automatic renewal service, and brought suit on behalf of herself and a proposed class of other Universal customers in California under California's Unfair Competition Law ("UCL"), alleging that Universal violated California's Automatic Renewal Law ("ARL"), which requires specific, clear and conspicuous disclosures before any person may be charged an automatically renewing fee in connection with a good or service.

After defeating Universal's motion to compel arbitration, seeking discovery and responding to discovery, and briefing Universal's arbitration appeal in the Ninth Circuit, Ms. Burzdak and Universal undertook mediation efforts.  Mediation was hard-fought and contentious.  The parties' first mediation session in June 2022 ended abruptly, resulting in heated exchanges between the parties and submissions to the Court regarding the status of discovery.  *See* Docket No. 66.  Nevertheless, the parties finally agreed on the key terms of a class action settlement on January 10, 2023, and then spent several weeks putting together a long-form settlement implementing that understanding, which was executed on March 10, 2023.  *See* Salahi Decl. ¶¶ 3, 8-9; *see also* Salahi Decl., Ex. 1 ("Settlement").

Under the proposed Settlement, Universal will create a non-reversionary cash fund of $1.84 million, representing over ▇% of all automatic renewal fees paid and not previously refunded by proposed Class members as of the time of settlement.  This recovery is far higher than most class settlements involving allegedly improper automatic renewal fees, *see, e.g.*, *Kissel v. Code 42 Software, Inc.*, No. SACV151936-JLS, 2017 WL 10560526, at *8 (C.D. Cal. Oct. 4, 2017) (granting final approval to $400,000 class settlement involving renewal charges, representing approximately 6% of class damages), figuring amongst the minority of such cases

that have secured significant relief.  *See*, *e.g.*, *Nichols v. Noom, Inc.*, No. 20-cv-03677 (KHP), 2022 WL 2705354, at *10 (S.D.N.Y. July 12, 2022) (granting final approval to $56 million settlement representing 27.5% of damages).  Indeed, Class Members' average net individual recovery is expected to be about $30.  Checks will automatically be mailed to every Class Member at their last known mailing address without any requirement to submit a claim.  In addition to providing meaningful monetary relief under the Settlement, Universal has revised its subscription process in a manner that it believes complies with the ARL.  In response to the litigation, Universal made certain changes to its enrollment process that it believes make the automatic renewal offer more obvious, including by adding a required "I agree" checkbox.  Although the proposed Settlement does not require Universal to make any specific changes to its subscription program other than agreeing to comply with the ARL, it does not preclude any person who is charged a renewal fee moving forward from bringing suit to remedy any perceived, ongoing violations of the statute.

The settlement puts money into class members' pockets immediately, and cuts short any risks and delay associated with ongoing litigation, including the risks related to Universal's pending appeal of the Court's order denying its motion to compel arbitration, and on the merits. Accordingly, Plaintiff respectfully moves this Court for an order certifying the proposed Settlement Class for settlement purposes, appointing Ms. Burzdak to represent the Settlement Class, appointing Rafey S. Balabanian, Yaman Salahi, and P. Solange Hilfinger-Pardo of Edelson PC as Class Counsel, preliminarily approving the Settlement, and ordering that notice be disseminated to class members.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff's Allegations

Ms. Burzdak placed an order on Bas Bleu, one of Universal's e-commerce websites, in October 2020.  Compl. ¶ 26.  After Ms. Burzdak's purchase, Universal enrolled Ms. Burzdak in the VIP Insider membership program, allegedly unbeknownst to her.  *Id.* ¶ 27.  Fewer than seven days later, Universal placed a $14.95 charge on Ms. Burzdak's debit card.  *Id.* ¶ 28.  The charge

1   was repeated three months in a row until Ms. Burzdak noticed the charges and called Universal to

2   cancel her membership.  *Id.* ¶¶ 28, 30.

3         Ms. Burzdak claims her experience was not unique.  Universal operates several e-

4   commerce websites, including Acorn, Bas Bleu, Daedalus Books, Signals, Support Plus, and What

5   On Earth.  Compl. ¶ 1.  Ms. Burzdak alleged that, when she filed her complaint, whenever a

6   consumer finalized an order on any of these websites, they are given the option to "Claim Your

7   **Free Shipping** Refund Now!"  *Id.* ¶ 16.  Beneath that statement in very fine print, the website

8   stated: "To claim your **free shipping**, provide your information below and click **SUBMIT** to join

9   Signals VIP Insider today!"  *Id.*  After the consumer entered their email address, Universal

10  automatically enrolled them into the VIP Insider membership program and began charging them

11  $14.95 every month after a 7-day "free" trial.  *Id.* ¶¶ 17-18.  A sample is displayed below:



**(Figure 1.)**

22        At no point during the VIP Insider enrollment process did Universal ask consumers to

23  provide a credit card or other billing information.  Compl. ¶ 18.  Consumers therefore allegedly

24  had no reason to believe that by accepting a "free shipping" offer, they would be subjected to

25  automatic, recurring charges in connection with a membership program.  *Id.*  Ms. Burzdak claimed

26  that Universal's conduct thus misled consumers into making regular payments to it, and that

27  conduct seemed intentional given how the renewal terms were obfuscated in small font and with

28  other design elements that make the information inconspicuous.  *Id.* ¶ 19.

**B.**    **Defendant's Motion to Compel Arbitration and Motion to Dismiss**

After Ms. Burzdak filed her suit on March 26, 2021, *see* Docket No. 1, Universal moved to compel arbitration and to dismiss and/or stay the case, *see* Docket No. 20.  The Court denied Universal's motion on August 16, 2021, holding that Universal's pop-up screen—the same one displayed above—"did not put a reasonably prudent website user on inquiry notice of the Terms of Use and, therefore, Ms. Burzdak cannot be bound by the Terms of Use which contain the arbitration provision."  Docket No. 37 at 14.  Universal filed a timely notice of appeal of that decision, *see* Docket No. 38, and then sought a stay of discovery pending resolution of its appeal, *see* Docket No. 44.  The Court denied the request for a stay, holding that Universal "has made several arguments as to why it is likely to succeed on the merits [of its appeal], or why there are at least serious questions, but none is persuasive."  Docket No. 55 at 5.  (The question whether an appeal of an order denying a motion to compel arbitration requires a mandatory stay is currently pending before the Supreme Court, with oral argument held on March 21, 2023.  *See Coinbase, Inc. v. Bielski*, No. 22-105 (U.S.).)

Plaintiff's complaint alleged two causes of action, one directly under the ARL and a second one under the UCL.  Compl. ¶¶ 37-50.  The UCL claim was premised on a violation of the ARL brought under the UCL's "unlawful" prong.  *Id.* ¶ 46.  On October 6, 2021, Universal filed a motion to dismiss Ms. Burzdak's cause of action under the ARL, arguing that there was no private right of action under that statute.  *See* Docket No. 43.  Ms. Burzdak agreed there was no private cause of action under the ARL, and explained that the ARL allegations merely formed the predicate for her claim under the UCL.  *See* Docket No. 45.  The Court granted Defendant's motion, observing that doing so "will have no real impact on the case because Plaintiff will still have a § 17200 claim based on a violation of § 17600."  Docket No. 51 at 1.  Universal did not attempt to dismiss the UCL claim.

**C.**    **Settlement Negotiations**

After the Court denied Universal's motion to compel arbitration, the parties proceeded to discovery, exchanging requests for production of documents and interrogatories.  Salahi Decl. ¶ 4.  After exchanging responses to those discovery requests, the parties explored the possibility of

engaging in mediation. *Id.* To prepare for settlement negotiations, Universal provided Ms. Burzdak's counsel with key information about the size of the proposed class as well as the amount in controversy (the amounts charged to class members in automatic renewal fees during the relevant time period). *Id.* The parties hired JAMS mediator John B. Bates, exchanged mediation briefs in advance of mediation where they argued the merits and class certification, as well as advanced settlement demands, and then met at a mediation with Mr. Bates on June 29, 2022. *Id.* ¶ 5. Unfortunately, the mediation was not successful, and the parties believed that mediation was no longer on the table. *Id.* ¶ 5.

After a cool-off period, however, the parties resumed informal settlement negotiations in approximately September 2022. Salahi Decl. ¶ 6. On September 30, 2022, Universal produced updated data to Ms. Burzdak's counsel about the size of the proposed class and updated information about the amount in controversy. *Id.* ¶ 7. The parties began exchanging term sheets in November 2022, and ultimately executed a Memorandum of Understanding outlining the key terms of the settlement on January 10, 2023. *Id.* ¶ 8. The parties then spent several weeks exchanging drafts of a long-form settlement agreement, developing a notice plan, and exchanging drafts of the proposed class notice. *Id.* The long-form settlement was executed by all parties on March 9 and March 10, 2023. *Id.* ¶ 9.

## II.    SUMMARY OF SETTLEMENT TERMS

The principal terms of the Settlement before the Court are as follows:

### A.    Settlement Class

The Settlement Class is defined as "all persons in the State of California who were enrolled and charged for VIP Insider membership between March 26, 2017 through Preliminary Approval. Excluded from the Settlement Class are (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (c) persons who properly execute and file a timely request for exclusion from the Settlement Class; and (d) the legal representatives, successors, and assigns of any such excluded persons." Settlement ¶ 1.24. The

only substantive difference between the Settlement Class and the Class alleged in the complaint is that the Settlement Class defines the eligible dates of membership to begin with the statute of limitations on March 26, 2017, and to end with the date of preliminary approval, which makes it easier for people to understand if they are members. *Compare* Compl. ¶ 31 *with* Settlement ¶ 1.24. *See* Procedural Guidance § 1(a) (calling for description of "[a]ny differences between the settlement class proposed in the operative complaint").

## B. Settlement Fund

The Settlement requires Universal to establish a $1.84 million Settlement Fund, out of which class members will be compensated, and, subject to Court approval, attorneys' fees and costs, service awards, and administrative costs will be paid. Settlement ¶ 1.26. If the Settlement is approved, no portion of the Settlement Fund will revert to Universal. *See* Procedural Guidance § 1(g).

## C. Allocation

The Settlement adopts an equitable allocation formula by which Class Members will receive a pro rata share from the fund proportionate to the amount of automatic renewal fees they have been charged by Universal in connection with VIP Inside Membership, and which have not previously been refunded. Settlement ¶ 1.27. If the Court ultimately grants Plaintiff's requests for attorneys' fees, costs, service awards, and administrative fees in full, then each Class Member's average net recovery is expected to be approximately $30. Salahi Decl. ¶ 10.

## D. Prospective Relief

Universal represents that it has changed its subscription process to comply with California's ARL. Plaintiff takes no position on whether the revised subscription process is compliant. Settlement ¶ 2.2. No person is precluded from bringing suit against Universal to seek injunctive relief if they believe its subscription process does not meet the ARL's requirements, provided they meet all applicable conditions for bringing suit.

## E. Payment of Settlement Notice and Administrative Costs

Payment of notice and administrative costs will come from the Settlement Fund. Settlement ¶ 1.22. The proposed Settlement Administrator, Simpluris, Inc., estimates that notice

1  and administrative costs will be approximately $96,450.  Salahi Decl., Ex. 3.

2      **F.      Payment of Attorney's Fees, Costs, and Service Award**

3          Prior to the objection deadline, proposed Settlement Class Counsel will move for an

4  award of fees and costs.  Settlement Class Counsel has agreed to limit their request for fees to

5  25% of the Settlement Fund.  Settlement ¶ 8.1.  Defendant retains the right to challenge any fee

6  request submitted by Class Counsel.  *Id.*  Should the Court award less than what Class Counsel

7  request, the balance will remain in the Settlement Fund for distribution to Class Members.  *Id.*

8  Further, in light of her service to the Settlement Class, Ms. Burzdak, will petition the Court for a

9  Service Award in the amount of $5,000.  *Id.*  ¶ 8.2.  Should the Court approve a lower award, the

10  balance will remain in the Settlement Fund for distribution to Settlement Class Members.

11      **G.      Release of Liability**

12          In exchange for the relief described above, Universal will obtain a release of "any and all

13  past and present claims or causes of action, including but not limited to those under California's

14  Automatic Renewal Law, whether known or unknown (including 'Unknown Claims' as defined

15  below), arising from Defendant's automatic renewal practices in connection with VIP Insider

16  membership arising on or before the date of Preliminary Approval."  Settlement ¶ 1.19.  The

17  released "Unknown Claims" are defined in Paragraph 1.29 of the Settlement.  The release is

18  intended to operate no more broadly than the doctrine of claim preclusion would were this an

19  individual suit related to allegedly improper renewal fees.  *See* Procedural Guidance § 1.B.

20  **III.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS**

21          Approval of a class action settlement proceeds in three stages. First, the parties present a

22  proposed settlement to the court for preliminary approval.  Second, if the court preliminarily

23  approves the settlement, notice of the proposed settlement is sent to the class, and class members

24  are given an opportunity to object or opt out of the settlement.  Third, after holding a final fairness

25  hearing, the court decides whether to give final approval to the settlement.  *See* Fed. R. Civ. P.

26  23(e); 4 Newberg and Rubenstein on Class Actions § 13:1 (6th ed.).

27          At the first stage, preliminary approval, the parties must show "that the court will likely be

28  able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of

judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Taking the second prong first, this Court will be able to certify the Settlement Class for purposes of Settlement and entering the final judgment. Because this settlement secures money damages, the Settlement Class must meet the requirements of Fed. R. Civ. P. 23(a) and the predominance and superiority criteria (minus the requirement of manageability) of Fed. R. Civ. P. 23(b)(3). *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). The proposed Settlement Class here consists of "all persons in the State of California who were enrolled and charged for a VIP Insider membership between March 26, 2017 through Preliminary Approval." Settlement ¶ 1.24. Universal does not oppose certification of a class for settlement purposes only.

### A.       The proposed Settlement Class is sufficiently numerous

Universal has represented, and informal discovery has confirmed, that the Settlement Class includes approximately 41,716 individuals. Salahi Decl. ¶ 8. By any measure, numerosity is satisfied because "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). *See also Akaosugi v. Benihana Nat. Corp.*, 282 F.R.D. 241, 253 (N.D. Cal. 2012) ("courts generally find the numerosity requirement satisfied when a class includes at least forty members.").

### B.       Common Questions Predominate Over Individual Issues

Rule 23(a)(2) requires the presence of questions of law or fact common to the proposed Class. This requirement is often analyzed alongside Rule 23(b)(3)'s requirement that common questions predominate over any individual questions present in the action. *See Akaosugi*, 282 F.R.D. at 254-55.

Examination of commonality and predominance begins with the elements of the underlying cause of action. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011). Ms. Burzdak's claim arises under the ARL and is brought through the UCL. The ARL requires businesses "to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer." Cal. Bus. & Prof. Code § 17602(a)(1). The "automatic renewal offer terms" include "[t]hat the subscription or purchasing agreement will continue until the consumer cancels," "[t]he description of the

cancellation policy that applies to the offer," "[t]he recurring charges that will be charged to the consumer's credit or debit card or payment account . . . as part of the automatic renewal plan or arrangement," "[t]he length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer," and "[t]he minimum purchase obligation, if any." *Id.* § 17601(b)(1)-(5).  Further, "clear and conspicuous" is defined to mean "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." *Id.* § 17601(c).  If a business fails to comply with these requirements, then the ARL declares it unlawful to "[c]harge the consumer's credit or debit card . . . for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement." *Id.* § 17602(a)(2).  And, to the extent "a business sends any goods, wares, merchandise, or products to a consumer" pursuant to an automatic renewal offer without first obtaining consent, "the goods, wares, merchandise, or products shall for all purposes be deemed an unconditional gift to the consumer." *Id.* § 17603. That means a defendant under the ARL is precluded from arguing that restitution of renewal fees is unwarranted because a consumer received some benefit in conjunction with the fees.

Here, all of those elements turn on common evidence tied to whether Defendant's automatic renewal offers were clear and conspicuous, not information about any proposed class member.  The enrollment process was substantially the same for all class members, in that they were presented with similar "free shipping" offers when they made purchases, which, if accepted, subjected them to recurring payments in connection with VIP Insider Membership.[1]  Plaintiff

---

[1]  Although Ms. Burzdak was enrolled online while some class members were enrolled via phone, she is pressing the same legal theory, alleging all methods of enrollment were legally defective in the same way (failure to present renewal offer in clear and conspicuous manner), alleging that all class members were harmed in the same way (unwitting recurring charges), and seeking the same relief for all class members (restitution of renewal charges).  Thus, she may represent all class members.  *See, e.g.*, *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2018 WL 3646895, at *3 (N.D. Cal. Aug. 1, 2018) (finding commonality and predominance satisfied with respect to alleged vehicle software defect, notwithstanding issuance of software updates throughout class period); *cf. Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 973-74 (N.D. Cal. 2018) (Chen, J.) (rejecting contention that named plaintiff lacked standing to represent individuals who purchased different products, but which were substantially similar and allegedly unlawful in the same way).

1  alleges that all manners of enrollment, whether via Universal's website or phone, failed to comply

2  with the ARL's requirement that the terms of the subscription offer be presented in a "clear and

3  conspicuous" manner.  *See* Cal. Bus. & Prof. Code § 17601(c).  Whether Universal's manner of

4  subscribing consumers to VIP Insider Membership complied with the ARL presents numerous

5  common legal and factual questions.  In these circumstances, there is no realistic risk that

6  individual issues could predominate over common questions on the key liability issues.  *See, e.g.*,

7  *Doe v. Neopets, Inc.*, No. 15-cv-8395-DMG (PLAx), 2016 WL 7647684, at *6 (C.D. Cal. Feb. 22,

8  2016) (certifying a class of consumers alleging an ARL violation, and holding, *inter alia*, that

9  "[w]hether the Website used by all putative class members conforms to the requirements [under

10  the ARL] for adequate notice, acknowledgement, and affirmative consent are common questions

11  that predominate" and "are, in fact, [the] sole questions at issue in this case").  Although each

12  proposed class member's damages varied, it is well-settled that possible variation of damages does

13  not preclude a finding of predominance.  *See Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d

14  1150, 1155 (9th Cir. 2016) ("[T]he need for individual damages calculations does not, alone,

15  defeat class certification.").  And, in any case, all damages can be calculated using common

16  evidence in Defendant's records of who was charged what and when.

17        Finally, because the proposed settlement class includes only California residents, and

18  only a claim under California state law has been brought, no choice-of-law analysis is needed,

19  and the laws of other states are not at issue.  *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d

20  581, 590-94 (9th Cir. 2012) (discussing analysis of predominance when a nationwide class

21  brings together claims under the laws of multiple jurisdictions), *overruled in other part by Olean*

22  *Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir.

23  2022).

24        **C.    Ms. Burzdak Is Typical of the Proposed Settlement Class**

25        The next Rule 23(a) factor is typicality.  "The purpose of the typicality requirement is to

26  assure that the interest of the named representative aligns with the interests of the class."  *Hanon*

27  *v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "The test of typicality is whether

28  other members have the same or similar injury, whether the action is based on conduct which is

1  not unique to the named plaintiffs, and whether other class members have been injured by the

2  same course of conduct." *Id.* (quotations omitted).

3         Typicality is met here.  Ms. Burzdak bought products from Universal, and then was

4  unknowingly enrolled into a VIP Insider Membership and charged renewal fees multiple times.

5  Like members of the proposed class, Ms. Burzdak alleges that Universal's automatic renewal

6  offer was inconspicuous in violation of the ARL, and that all fees subsequently charged for VIP

7  Insider membership were therefore unlawful and should be returned to the class.  The legal

8  theory she presses and the relief she seeks is the same for herself as it is for the proposed class,

9  satisfying the typicality requirement.  *See*, *e.g.*, *Juarez v. Social Finance, Inc.*, No. 20-CV-

10 03386-HSG, 2022 WL 17722382, at *4 (N.D. Cal. Dec. 15, 2022) (finding typicality satisfied

11 because "Plaintiffs' claims are both factually and legally similar to those of the putative class");

12 *Cottle v. Plaid, Inc.*, 340 F.R.D. 356, 371 (N.D. Cal. 2021) (finding typicality satisfied because

13 "Plaintiffs' claims stem from the same course of conduct and pattern of alleged wrongdoing as

14 the claims of the Class Members").

15
       **D.**     **Ms. Burzdak and Her Attorneys Are Adequate Representatives of the**
16              **Proposed Settlement Class**

17        The final Rule 23(a) factor—adequacy—tests the ability of both the named plaintiff and

18 her lawyers to protect the interests of absent class members.  "Courts engage in a dual inquiry to

19 determine adequate representation and ask: (1) do the named plaintiffs and their counsel have

20 any conflicts of interest with other class members and (2) will the named plaintiffs and their

21 counsel prosecute the action vigorously on behalf of the class?" *Cottle*, 340 F.R.D. at 371

22 (quotations omitted).

23        Ms. Burzdak is plainly adequate.  She suffers from no conflicts of interest with the absent

24 class members because she was allegedly injured in the same way and by the same conduct as

25 other members of the class.  Her interests are therefore aligned with the rest of the class.

26 Moreover, Ms. Burzdak has already demonstrated her willingness to vigorously pursue these

27 representative claims: Although this case settled early in the discovery phase of the case, she

28 worked closely with proposed Settlement Class Counsel to investigate the issues in this case,

1    monitored the proceedings, and supported counsel's efforts to steer the case to a positive

2    resolution.  Salahi Decl. ¶ 11.  She also searched for and provided relevant evidence to her

3    attorneys, and was prepared to sit for a deposition and to testify at trial.  *Id.* She vigorously

4    pursued the class's interests.

5          Ms. Burzdak's chosen counsel, Edelson PC, is also adequate.  Edelson PC has extensive

6    experience litigating class actions of similar size, scope, and complexity to the instant action.

7    Edelson PC is a national leader in high stakes' plaintiffs' work ranging from class and mass

8    actions to public client investigations and prosecutions.  *See* Firm Resume of Edelson PC,

9    attached as Exhibit 2 to Salahi Decl.  The firm has been named by Law360 as a Consumer

10   Protection Group of the Year (2016, 2017, 2019, 2020), a Class Action Group of the Year

11   (2019), a Plaintiff's Class Action Powerhouse (2017, 2018, 2019); similarly, the National Law

12   Journal identified Edelson PC as "Elite Trial Lawyers" in Consumer Protection (2020, 2021) and

13   Class Action (2021) categories.  *Id.* at 7.  The firm has secured hundreds of millions of dollars of

14   relief in important consumer protection matters.  *Id.* at 14-15.  Proposed Class Counsel diligently

15   investigated, prosecuted, and dedicated substantial resources to the claims in this action and will

16   continue to do so throughout its pendency.  Salahi Decl. ¶ 14.  The record discloses no conflicts

17   of interest and proposed Class Counsel are aware of none.  *Id.* ¶ 13.

18          **E.     Class Treatment Is Superior to the Alternatives**

19          Turning to Rule 23(b)(3), the only remaining criterion to consider is whether a class

20   action is a superior way to resolve this controversy.  (Of the other Rule 23(b)(3) factors,

21   predominance is discussed above, and manageability is irrelevant in this settlement posture.  *See*

22   *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (noting that "confronted with a

23   request for settlement-only class certification, a district court need not inquire whether the case,

24   if tried, would present intractable management problems, for the proposal is that there be no

25   trial" but that the remaining prerequisites demand "undiluted, even heightened, attention"

26   (citation omitted)).

27          A class action is clearly the superior means of resolving this litigation.  The proposed

28   Settlement Class consists of over 40,000 individuals, the vast majority of whom lost relatively

1    small sums that would make individual litigation or arbitration cost prohibitive.  Salahi Decl. ¶

2    10.  "In light of the small size of the putative class members' potential individual monetary

3    recovery, class certification may be the only feasible means for them to adjudicate their claims."

4    *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013).  That is likely why class

5    members have not demonstrated any interest in individually controlling this litigation, or in

6    seeking relief individually outside of this lawsuit.  *See* Fed. R. Civ. P. 23(b)(3)(A)-(B) (outlining

7    these as factors relevant to superiority).  And requiring these class members to individually

8    litigate would needlessly clog the courts with a multitude of identical disputes, as opposed to the

9    streamlined efficiency of this single class proceeding.  *Cottle*, 340 F.R.D. at 372 (finding

10   superiority established where "the range of issues is limited and individual cases addressing

11   these issues would likely address the same wrongful conduct and use the same supporting

12   evidence").  Superiority is therefore satisfied.

13   **III.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL**

14           In addition to showing that the Settlement Class is certifiable, the parties must also show

15   that the Court "will likely be able to … approve the [settlement] proposal under Rule 23(e)(2)."

16   Fed. R. Civ. P. 23(e)(1)(B)(i).  Rule 23(e)(2) requires the Court to find that the settlement is

17   "fair, reasonable, and adequate" after considering whether: (A) the class representative and class

18   counsel have adequately represented the class; (B) the settlement was negotiated at arm's length;

19   (C) the relief provided for the class is adequate; and (D) the settlement treats class members

20   equitably relative to each other. Fed. R. Civ. P. 23(e)(2).  Also, because of the pre-certification

21   posture of this case, the factors identified by the Ninth Circuit in *In re Bluetooth Headset*

22   *Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011).  Because the *Bluetooth* factors are

23   relevant to one of the procedural concerns highlighted by Rule 23(e), the two tests are discussed

24   together.  Ultimately, this Settlement easily clears the heightened bar set for pre-certification

25   settlements.

26           **A.     Ms. Burzdak and Proposed Class Counsel Adequately Represented the Class**

27           The first Rule 23(e) factor concerns adequate representation.  The focus of this analysis is

28   "on the actual performance of counsel acting on behalf of the class" throughout the litigation and

1   in settlement negotiations.  Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018

2   Amendment; *see Gumm v. Ford*, No. 5:15-cv-41-MTT, 2019 WL 479506 at *3 (M.D. Ga. Jan.

3   17, 2019).  This factor overlaps significantly with the adequacy requirement of Rule 23(a).  *See*

4   *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL 1437101, at *6 (N.D. Cal.

5   Mar. 29, 2019).  In considering this factor, courts should further examine whether plaintiff and

6   class counsel had adequate information to negotiate a class-wide settlement.  Fed. R. Civ. P.

7   23(e) Advisory Committee's Note to 2018 Amendment.  Ultimately, this factor is generally

8   satisfied where the named plaintiff and class counsel "have prosecuted the case with diligence

9   and success."  *In re Snap Inc. Securities Litig.*, No. 2:17-CV-0367-SVW, 2021 WL 667590, at

10   *1 (C.D. Cal. Feb. 18, 2021).

11          Here, counsel had the basic information necessary to craft a fair settlement.  Settlement

12   Class Counsel's pre-suit investigation revealed the relevant facts regarding the enrollment process

13   for VIP Insider Membership.  Additionally, Universal provided informal discovery to help counsel

14   understand the proposed class's potential recovery, should the case proceed to trial.  *See Linney v.*

15   *Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("In the context of class action

16   settlements, formal discovery is not a necessary ticket to the bargaining table where the parties

17   have sufficient information to make an informed decision about settlement.") (quotations omitted).

18   During negotiations, Universal provided information about the class size and amount in

19   controversy as of August 31, 2022.  Salahi Decl. ¶ 7; *see also* Settlement ¶ 7.2.  On January 31,

20   2023, Defendant supplemented that information, confirming that the class size through December

21   31, 2022 was 41,716 individuals, who collectively were charged $███████ in unrefunded

22   renewal fees.  Salahi Decl. ¶ 8.  That means that the Settlement returns approximately ███% of

23   the losses suffered by the Settlement Class back to Settlement Class Members.  *See, e.g.*, *Kissel*,

24   2017 WL 10560526, at *8 (settlement obtained 6% recovery); *Nichols*, 2022 WL 2705354, at *10

25   (settlement obtained 27.5% recovery).

26          **B.      The Settlement Was Negotiated at Arm's Length and There Are No Indicia**
            **of Collusion**

27          The second Rule 23(e) factor asks whether the proposed settlement was negotiated at arm's

28   length.  "This inquiry aims to root out settlements that may benefit the plaintiffs' lawyers at the

1    class's expense[]."  Newberg & Rubenstein on Class Actions § 13:50.  The concern, which is also

2    embodied in this Circuit's *Bluetooth* factors, is that "the defendant will dangle such a healthy fee

3    in front of the plaintiffs' lawyer that they will settle the class's claims at a discount.  *See id.*; *see*

4    *also Bluetooth* ("Prior to formal class certification, there is an even greater potential for a breach

5    of fiduciary duty owed the class during settlement.  Accordingly, such agreements must withstand

6    an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is

7    ordinarily required under Rule 23(e).").

8         Here, both sides were represented by counsel with significant class action experience.

9    Salahi Decl. ¶ 12.  Additionally, the parties enlisted the assistance of John Bates of JAMS, who

10   ordered the parties to prepare mediation briefs and who supervised the parties' first attempt at

11   mediation.  *Id.* ¶ 5.  Although that mediation was not successful, the parties later resumed

12   discussions along the same contours as during mediation with Mr. Bates through their respective

13   attorneys and through a contentious process that lasted several months.  *Id.* ¶ 6.

14        These lengthy negotiations demonstrate that the proposed Settlement is the product of

15   arm's-length negotiations. *See Cmty. Resources for Indep. Living v. Mobility Works of Cal., LLC*,

16   533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) ("serious, informed, non-collusive negotiations" taking

17   place over an "extended" period weighed in favor of settlement approval); *Vianu v. AT&T*

18   *Mobility LLC*, No. 19-CV-03602-LB, 2022 WL 16823044, at *7 (N.D. Cal. Nov. 8, 2022) (finding

19   that negotiations aided by an experienced mediator weighed in favor of settlement approval).

20        Moreover, the Settlement bears none of the "subtle signs of implicit collusion" that the

21   Ninth Circuit has cautioned district courts to guard against.  *Roes, 1-2 v. SFBC Mgmt., LLC*, 944

22   F.3d 1035, 1049-50 (9th Cir. 2019).  These factors, commonly called the *Bluetooth* factors, are:

23   (1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties

24   negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a

25   certain fee request by class counsel); and (3) when the parties create a reverter that returns

26   unclaimed [funds] to the defendant.  *Bluetooth*, 654 F.3d at 947.[2]

27   _____

28   [2]      Later cases have also indicated that "large incentive payments seemingly untethered from
     service to the class" also may be evidence of collusion.  *Roes, 1-2*, 944 F.3d at 1049; *see Luz*
                                                                        (continued...)

None of those factors appear here. First, the Settlement provides that Class Counsel will limit any request for fees to 25% of the Settlement Fund, and that Class Counsel's payment will be subject to approval by the Court. Settlement ¶ 8.1. This 25% figure is the "benchmark" fee award in this Circuit. *See Vizcaino v. Microsoft Corp.*, 97 F.3d 1187 (9th Cir. 1996). And, of course, this Court will need to determine what fee is "reasonable" to award under the circumstances. *See Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). Similar and larger proposed awards have been found not to be indicative of collusion. *See, e.g.*, *Luz Bautista-Perez v. Juul Labs, Inc.*, No. 20-CV-01613-HSG, 2022 WL 307942, at *6 (N.D. Cal. Feb. 2, 2022) ("And while the Settlement Agreement authorizes Plaintiffs' counsel to request up to $750,000 in attorneys' fees, which is about 42% of the gross settlement fund, it does not necessarily contemplate a disproportionate cash allocation between counsel and the class"); *Cottle*, 340 F.R.D. at 378 (proposed 25% award was "presumptively reasonable" and not a disproportionate fee award); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) (proposal to seek fees and costs equal to 32% of settlement not disproportionate).

Second, there is no clear sailing agreement here. Universal retains the right to object to any proposed fee award Class Counsel petitions for. *See* Settlement ¶ 8.1 ("Defendant may challenge the amounts requested.").

Third, there is no reverter or kicker clause. All class members will be issued their payments without any need to submit a claim. If any check goes uncashed, remaining funds will be redistributed to the class unless it is not economically feasible to do so, at which point left over funds may be given to a *cy pres* beneficiary subject to Court approval. Settlement ¶ 2.1(f). Moreover, should the Court award less in fees, costs, or service awards than what Ms. Burzdak and proposed Settlement Class Counsel seek, the difference will remain in the Settlement Fund for distribution to Class Members. Settlement ¶ 8.1. *See also* Procedural Guidance § 1(g) (directing

---

*Bautista-Perez v. Juul Labs, Inc.*, No. 20-CV-01613-HSG, 2022 WL 307942, at *6-*7 (N.D. Cal. Feb. 2, 2022). The modest size of the service award contemplated by the Settlement is discussed in conjunction with another of the Rule 23(e) factors, concerning the equitable distribution of settlement proceeds. *See infra* § III.D.

litigants to discuss at preliminary approval whether the proposed settlement contains any provision for reversion of funds to the defendant).

Thus, the terms of the Settlement contain none of the subtle signs of collusion that the Ninth Circuit has cautioned against, confirming that the Settlement was negotiated at arm's length.

### C.    The Relief Obtained Is Meaningful and Significant Compared to Similar Settlements

The next Rule 23(e) factor directs the Court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Similarly, this District's Procedural Guidance for Class Action Settlements asks litigants at the preliminary approval stage to discuss "the class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims."  Procedural Guidance § 1(c).

Here, the relief provided by the Settlement is outstanding.  Class Members allegedly were unlawfully charged approximately $███████ in automatic renewal fees.  The $1.84 million settlement returns approximately ████% of their losses.[3]

Although the Settlement does not achieve full relief for past losses, the relief secured by the Settlement is still outstanding in light of the costs and risks of future litigation, and the delay that would be caused by any trial or appeal.  Indeed, Universal's pending appeal of the Court's order denying its motion to compel arbitration has already delayed class discovery for over a year. And if Universal's appeal were successful, and the Ninth Circuit held that individual arbitration

---

[3]    Section 1(c) of this District's Procedural Guidance on Class Action Settlements asks Plaintiff to estimate recovery on a claim-by-claim basis.  Here, there is only one claim brought under the UCL, and the only monetary losses alleged are the automatic renewal fees that were charged to the class.  Restitution of these amounts is the only monetary relief available under the UCL.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003).

was required, then the class would receive nothing at the end of the day.  *See Harrison v. Bank of Am. Corp.*, No. 19-CV-00316-LB, 2021 WL 5507175, at *3 (N.D. Cal. Nov. 24, 2021) (approving settlement that returned approximately 20% of total damages); *see also Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.").

While Ms. Burzdak is confident in her ability to prevail on the merits of an ARL claim, both the arbitration appeal and class certification would have posed some risk to the class.  First, the Ninth Circuit might have held that the Terms of Service were in fact sufficiently conspicuous to create a valid arbitration agreement.  Not only would that have ended the litigation and the possibility of a class recovery, but it would also have carried negative consequences on the merits. If the link to the Terms of Service was sufficiently conspicuous, then why not also the terms of the automatic renewal offer, which appeared in the same fine print as the link to the Terms of Service? *Cf.* Docket No. 37 at 7 n.4 (noting that "the inquiry notice standard [for purposes of whether an arbitration agreement was formed] does require the Court to consider whether the Terms of Use were clear and conspicuous as that term is used by the California Automatic Renewal Law"). Second, at class certification, Universal would have argued, among other things, that significant variations in class member experiences precluded certification, or that class members benefited from VIP Insider Membership by receiving free shipping or rewards points, precluding a finding of predominance or commonality.  Third, in addition to its arguments about compliance with the ARL, Universal intended to argue that some class members received benefits in the form of rewards points or free shipping, precluding restitution on the merits.  *See, e.g., Turnier v. Bed Bath & Beyond Inc.*, No. 3:20-CV-00288-L-MSB, 2021 WL 4209473, at *2 (S.D. Cal. Sept. 16, 2021) (granting motion to dismiss ARL claim where plaintiff who obtained and used benefits of subscription was entitled to restitution of associated renewal fees).  Fourth, Universal also intended to invoke a "good faith" defense from liability.  *See, e.g., Roz v. Nestle Waters N. Am., Inc.*, No. 2:16-CV-4418-SVW, 2017 WL 6942661, at *3 (C.D. Cal. Dec. 6, 2017) ("Even assuming that [defendant] technically violated Section 17600 *et seq.*, [defendant] could be

1  protected from civil liability because it complied in good faith, or substantially complied, with the

2  statutory scheme.").  While Ms. Burzdak had both legal and factual arguments to make on each of

3  these issues, she and her counsel recognize that several of these anticipated defenses introduced

4  real risk to her and members of the proposed class.  Add to these risks the fact that even if the

5  Class were to prevail, any success would not come for years, as either party would also be likely

6  to appeal an adverse judgment.

7          Balanced against these risks, and the attendant delay associated with litigating a case

8  through trial and appeal, the recovery secured by the Settlement is excellent.  This is all the more

9  so because Class Members will not have to do anything in order to obtain relief from the

10  Settlement.  The Settlement provides for checks to be automatically sent to each class member's

11  last known address without any requirement to submit a claim form.  *See Taafua v. Quantum*

12  *Glob. Techs., LLC*, No. 18-CV-06602-VKD, 2020 WL 4732342, at *7 (N.D. Cal. Aug. 14, 2020)

13  ("Considering the potential risks and costs of proceeding to trial, as well as the relative ease with

14  which class members may receive their funds, at this stage the Court is satisfied that

15  the settlement consideration is adequate.").

16          Finally, the Settlement's proposed attorney's fees are reasonable.  As discussed above,

17  the Settlement contemplates that Class Counsel will seek a benchmark fee award of 25%, which

18  would not result in a disproportionate distribution to Class Counsel.  Moreover, the Court retains

19  the authority to reduce any fee award to ensure that it is reasonable.

20          Thus, the relief secured by the Settlement demonstrates that the Settlement is fair and

21  reasonable.[4]

22          **D.**      **The Settlement treats Class Members equitably relative to each other**

23          The final Rule 23(e) factor concerns whether the proposed settlement treats class

24  members equitably relative to each other.  The instant Settlement easily passes this test, as

25  Settlement Class Members' recovery is calibrated to how much they were charged in automatic

26  renewal fees.  *See In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2022 WL

27  17409738, at *5 (N.D. Cal. Dec. 2, 2022) (finding at preliminary approval that settlement which

28  
---
[4]      There are no agreements required to be identified under Fed. R. Civ. P. 23(e)(3).

contained tiered allocation plan depending on class member injuries "appears to treat class members equitably relative to each other"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits."). This type of pro rata allocation is fair and reasonable.

Finally, while the Settlement proposes to issue a service award to the Named Plaintiff, Ms. Burzdak, that does not automatically indicate inequitable treatment. Such awards are commonplace, and serve to recognize the valuable efforts of a class representative, without which this type of representative litigation and class settlement could not even exist. As will be explained more fully in a later motion, Ms. Burzdak participated closely with Class Counsel in developing the case and in discovery, and was ready to sit for deposition or testify at trial. Salahi Decl. ¶ 11. Under the Settlement, these efforts permit Ms. Burzdak to petition the Court for an award of up to $5,000. This is on the lower end of incentive awards in this District, constitutes 0.27% of the proposed Settlement Fund, and is presumptively reasonable. *See In re Facebook Biometric Info. Privacy Litig.*, No. 21-15553, 2022 WL 822923, at *2 (9th Cir. Mar. 17, 2022) (noting that the Ninth Circuit "regularly uphold[s] incentive awards" of $5,000); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) (noting that a $5,000 award is "presumptively reasonable"). Moreover, the Court will retain the authority to reduce or even reject the proposed service award. Thus, this additional allocation of funds is equitable. *See Evans v. Zions Bancorp., N.A.*, No. 2:17-CV-01123 WBS DB, 2022 WL 16815301, at *5 (E.D. Cal. Nov. 8, 2022) (finding that $5,000 service awards comported with equitable treatment of class members); *see also Juarez*, 2022 WL 17722382, at *6 (noting that settlement's provision for an incentive award did not indicate preferential treatment because any such award would need to be supported with evidence).

Thus, the instant proposed Settlement warrants preliminary approval.

## IV.     THE PROPOSED NOTICE COMPLIES WITH DUE PROCESS AND RULE 23

Finally, once the Court has determined that the Settlement should be preliminarily approved, the Court must order that the parties direct notice of the Settlement to the Settlement

1    Class. *See* Fed. R. Civ. P. 23(e)(1).  The parties must provide the absent class with the "best

2    notice practicable" under the circumstances.  *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir.

3    1994).  While this standard does not demand individual notice to every class member, it does

4    require "individual notice to all members who can be identified through reasonable effort."  Fed.

5    R. Civ. P. 23(c)(2); *see Schneider v. Chipotle Mexican Grill*, 336 F.R.D. 588, 596 (N.D. Cal.

6    2020).

7        The parties here have agreed to a comprehensive Notice Plan designed to ensure

8    individual notice to all, or nearly all, of the Settlement Class.  Defendant will provide the

9    Settlement Administrator with contact information, including name, e-mail address, and last

10   known mailing address for every class member, in addition to the amounts each class member

11   was charged in unrefunded renewal fees during the class period.  Settlement ¶ 4.1.  Direct notice

12   via e-mail is the principal form of notice contemplated by the Settlement.  *Id.* ¶ 4.3.  The

13   proposed e-mail notice is attached as Exhibit A to the Settlement.  If no e-mail address is

14   available (unlikely for an ecommerce website), or if emails bounce, then the Settlement

15   Administrator will send postcard notice via U.S. mail to the class member's last known address,

16   after running it through the National Change of Address database.  Settlement ¶ 4.3.  The

17   proposed postcard notice is attached as Exhibit B to the Settlement.  Finally, a long-form notice

18   with more information will also be made available on a settlement website.  Settlement ¶ 4.5.

19   The long-form notice is attached as Exhibit C to the Settlement.  These combined methods

20   should deliver notice of this Settlement to nearly all members of the Settlement Class, well in

21   excess of what is required by Due Process and Rule 23.

22       Moreover, mindful of both the requirements of Rule 23, *see In re Online DVD-Rental*

23   *Antitrust Litigation*, 779 F.3d 934, 945-47 (9th Cir. 2015), and this District's Procedural

24   Guidance on Class Action Settlements, the parties drafted the notice to provide—in plain

25   English, as free from legalese as is possible—sufficient information to Settlement Class

26   Members about the benefits available under the Settlement, how to object to the Settlement, and

27   how to opt out.

28

1    To effectuate this Notice Plan, the parties have selected Simpluris Inc. as Settlement

2  Administrator.  The parties solicited three bids for the role of settlement administrator, and

3  received three proposals.  Salahi Decl. ¶ 15.  The Simpluris proposal was the most cost-

4  effective—Simpluris estimates that administrative costs for this Settlement will total around

5  $96,500, which amount is to be paid out of the Settlement Fund.  *Id.*  In addition, and as

6  explained more fully in the Declaration of Jacob Kamenir, Simpluris is Soc2 compliant, has

7  numerous controls in place to ensure the security of class member personal data, and has the

8  standard suite of relevant insurance.  *See* Procedural Guidance § 2(a), (b).  Edelson PC has

9  engaged Simpluris in eight other matters within the past two years.  Salahi Decl. ¶ 15; *see*

10  Procedural Guidance § 2(a).

11    The Court should therefore approve the proposed form and manner of notice, and order

12  that notice be disseminated to the absent class.

13  **V.    CONCLUSION**

14    The court should certify the proposed Settlement Class for settlement purposes, appoint

15  Ms. Burzdak to represent the Settlement Class, appoint Rafey S. Balabanian, Yaman Salahi, and

16  P. Solange Hilfinger-Pardo of Edelson PC as Class Counsel, preliminarily approve the Settlement,

17  and order that notice be disseminated to class members.

18

19  Date: March 27, 2023                    By: */s/ Yaman Salahi*

20                                          Rafey Balabanian (SBN 315962)
                                            rbalabanian@edelson.com
21                                          Yaman Salahi (SBN 288752)
                                            ysalahi@edelson.com
22                                          P. Solange Hilfinger-Pardo (SBN 320055)
                                            shilfingerpardo@edelson.com
23                                          EDELSON PC
                                            150 California Street, 18th Floor
24                                          San Francisco, California 94111
                                            Tel: 415.212.9300
25                                          Fax: 415.373.9435
26
27                                          *Attorneys for Plaintiff Karen Burzdak*
                                            *and the Putative Class*
28