Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Yaman Salahi (SBN 288752)
ysalahi@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Attorneys for Plaintiff and the Settlement Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KAREN BURZDAK, individually and on behalf of all others similarly situated,<br><br>                   Plaintiff,<br><br>          v.<br><br>UNIVERSAL SCREEN ARTS, INC., an Ohio corporation,<br><br>                   Defendant. | CASE NO.: 3:21-cv-02148-EMC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: December 21, 2023<br>Time: 1:30 PM<br>Judge: Hon. Edward M. Chen<br>Courtroom: 5, 17th Floor |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on December 21, 2023, at 1:30 p.m., or at such other time as may be set by the Court, Plaintiff Karen Burzdak will appear, through counsel, before the Honorable Edward M. Chen or any Judge sitting in his stead, in Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, and then and there, respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant Plaintiff's Motion for Final Approval of Class Action Settlement.

Plaintiff's motion is based upon this Notice, the Memorandum of Points and Authorities filed herewith, the Declaration of Jacob Kamenir filed simultaneously herewith, and the record in this matter, along with any oral argument that may be presented to the Court and evidence submitted in connection therewith.

Respectfully Submitted,

KAREN BURZDAK, individually and on behalf of all other similarly situated,

Dated: November 16, 2023                By: */s/ Yaman Salahi*

Rafey Balabanian SBN 315962)
rbalabanian@edelson.com
Yaman Salahi (SBN 288752)
ysalahi@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Attorneys for Plaintiff Karen Burzdak*
*and the Settlement Class*

# TABLE OF CONTENTS

I.     FACTUAL BACKGROUND ................................................................. 2

II.    SUMMARY OF THE SETTLEMENT TERMS ................................... 5

       A.    Settlement Class ................................................................ 5

       B.    Settlement Fund ................................................................ 6

       C.    Allocation .......................................................................... 6

       D.    Prospective Relief ............................................................ 6

       E.    Payment of Settlement Notice and Administrative Costs ................. 7

       F.    Payment of Attorneys' Fees, Costs, and Service Award ................... 7

       G.    Release of Liability .......................................................... 7

III.   THE COURT SHOULD CONFIRM CERTIFICATION OF THE SETTLEMENT CLASS ................................................................................... 7

IV.    NOTICE TO THE CLASS COMPORTED WITH DUE PROCESS ......................... 8

V.     THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ........................ 9

       A.    Ms. Burzdak and Proposed Class Counsel Adequately Represented the Class ................................................................. 10

       B.    The Settlement Was Negotiated at Arm's Length and There Are No Indicia of Collusion ................................................... 11

       C.    The Relief Obtained Is Meaningful and Significant Compared to Similar Settlements ................................................................ 13

       D.    The Settlement Treats Class Members Equitably Relative to Each Other ... 16

       E.    There Are No Objections .............................................. 17

VI.    CONCLUSION ........................................................................... 17

1

2

## TABLE OF AUTHORITIES

**Cases**

3

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ........................................................................ 9, 14

4

5

*Cmty. Resources for Indep. Living v. Mobility Works of Cal., LLC*,
   533 F. Supp. 3d 881 (N.D. Cal. 2020) ............................................................. 12

6

7

*Coinbase, Inc. v. Bielski*,
   599 U.S. 736 (2023) ......................................................................................... 3, 14

8

*Cottle v. Plaid Inc.*,
   340 F.R.D. 356 (N.D. Cal. 2021) ......................................................................... 13

9

10

*Edwards v. Andrews*,
   846 Fed. App'x. 538 (9th Cir. 2021) ..................................................................... 8

11

12

*Evans v. Zions Bancorporation, N.A.*,
   No. 2:17-CV-01123 WBS DB, 2022 WL 16815301 (E.D. Cal. Nov. 8, 2022) ............... 16

13

14

*Gumm v. Ford*,
   No. 5:15-cv-41-MTT, 2019 WL 479506 (M.D. Ga. Jan. 17, 2019) ......................... 10

15

*Harrison v. Bank of Am. Corp.*,
   No. 19-CV-00316-LB, 2021 WL 5507175 (N.D. Cal. Nov. 24, 2021) ...................... 14

16

17

*In re Bluetooth Headset Products Liability Litigation*,
   654 F.3d 935 (9th Cir. 2011) ................................................................. 10, 11, 12

18

19

*In re Facebook Biometric Info. Privacy Litig.*,
   No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022) ................................. 16

20

21

*In re LinkedIn User Priv. Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ......................................................................... 13

22

*In re MacBook Keyboard Litig.*,
   No. 5:18-CV-02813-EJD, 2022 WL 17409738 (N.D. Cal. Dec. 2, 2022) .................. 16

23

24

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................... 16

25

26

*In re Snap Inc. Securities Litig.*,
   No. 2:17-CV-0367-SVW, 2021 WL 667590 (C.D. Cal. Feb. 18, 2021) .................... 10

27

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   445 F. Supp. 3d 508 (N.D. Cal. 2020) ................................................................. 16

28

*Juarez v. Soc. Fin., Inc.*,
    No. 20-cv-03386-HSG, 2022 WL 17722382 (N.D. Cal. Dec. 15, 2022)........................ 16

*Kissel v. Code 42 Software, Inc.*,
    No. 15-cv-01936-JLS-KES, 2017 WL 10560526 (C.D. Cal. Oct. 4, 2017)................. 1, 11

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ....................................................................... 11

*Luz Bautista-Perez v. Juul Labs, Inc.*,
    No. 20-CV-01613-HSG, 2022 WL 307942 (N.D. Cal. Feb. 2, 2022) ........................... 12

*Mendez v. C-Two Grp., Inc.*,
    No. 13-cv-05914-HSG, 2017 WL 2861118 (N.D. Cal. July 5, 2017) ........................... 9

*Naiman v. Total Merchant Servs., Inc.*,
    No. 17-cv-03806, 2019 WL 13194603 (N.D. Cal. Apr. 16, 2019) ............................... 9

*Nichols v. Noom, Inc.*,
    No. 20-cv-3677-KHP, 2022 WL 2705354 (S.D.N.Y. July 12, 2022) ........................... 11

*O'Connor v. Uber Techs., Inc.*,
    No. 13-CV-03826-EMC, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ....................... 10

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ........................................................................ 14

*Roes, 1-2 v. SFBC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ...................................................................... 12

*Roz v. Nestle Waters N. Am., Inc.*,
    No. 2:16-CV-4418-SVW-JEM, 2017 WL 6942661 (C.D. Cal. Dec. 6, 2017) ............... 15

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) ......................................................................... 8

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................ 12

*Taafua v. Quantum Glob. Techs., LLC*,
    No. 18-CV-06602-VKD, 2020 WL 4732342 (N.D. Cal. Aug. 14, 2020)....................... 15

*Turnier v. Bed Bath & Beyond Inc.*,
    No. 3:20-CV-00288-L-MSB, 2021 WL 4209473 (S.D. Cal. Sept. 16, 2021) ............... 15

*Vianu v. AT&T Mobility LLC*,
    No. 19-CV-03602-LB, 2022 WL 16823044 (N.D. Cal. Nov. 8, 2022) ........................... 12

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 1996) .......................................................................................... 12

**Other Authorities**

Procedural Guidance § 1 ............................................................................................... 6, 7

**Rules**

Fed. R. Civ. P. 23(e) ................................................................................................. *passim*

The Court previously granted preliminary approval of the proposed Settlement of this case, which returns a $1.59 million fund to the Settlement Class, representing nearly a 40% recovery of all losses without the need for a claim form.  The Settlement Administrator has now disseminated notice to the Settlement Class, and the Settlement has been met with overwhelming support.  Only one Class Member out of over 32,000 has opted out, and no objections were filed.

The favorable reaction of the Class should come as no surprise.  This Settlement provides a strong and meaningful recovery in a field of litigation—automatic renewal charges—where litigating parties often settle for a much smaller proportion of damages.  As the Court is aware, this case arose out of Defendant Universal Screen Arts, Inc.'s alleged failure to comply with California law regarding automatic renewal offers on its websites.  Specifically, Plaintiff Karen Burzdak alleged that Universal operates numerous e-commerce brands, and that it snagged unwitting consumers making purchases on its websites into an automatically-renewing membership fee for its "VIP Insider" program with misleading "free shipping" offers that did not clearly or conspicuously explain the nature of the recurring monthly fees.  After defeating Defendant's motion to compel arbitration, briefing an appeal of that decision, discovery, and mediation, Plaintiff and Class Counsel were able to secure an excellent result for the Settlement Class: a recovery of $1.59 million, which represents a 38.72% recovery of the total amount paid by members of the class in automatic renewal fees.

Given the risks of further litigation and the pending appeal, this is an outstanding result. *Compare Kissel v. Code 42 Software, Inc.*, No. 15-cv-01936-JLS-KES, 2017 WL 10560526, at *8 (C.D. Cal. Oct. 4, 2017) (granting final approval to $400,000 class settlement involving renewal charges, representing approximately 6% of class damages).  Under the proposed Settlement, the average Class Member will be entitled to a gross recovery of $48, before the deduction of any costs or fees.  Payments will be remitted to all Class Members automatically via check without the need to file a claim, though Class Members had the option to choose to receive their allocation electronically if they prefer.

Considering the outstanding relief secured by the proposed Settlement and the favorable reaction of the Class, the Court should have no trouble approving this Settlement as fair, reasonable, and adequate.

## I.    FACTUAL BACKGROUND

This case was prompted by Ms. Burzdak's experience interacting with Universal's e-commerce website, www.basbleu.com.  After she made a purchase on the Bas Bleu website and was presented with a "free shipping" offer, Universal enrolled her into the VIP Insider membership program, a subscription she alleges was unknowing and unwanted.  Docket No. 1 ("Compl.") ¶¶ 26-7.  Within a week, Universal had placed a $14.95 charge on Ms. Burzdak's debit card, and did so three months in a row before Ms. Burzdak noticed the charges and called Universal to cancel her membership.  *Id.* ¶¶ 28, 30.

Ms. Burzdak alleged that her experience was not unique, but in fact was similar to that of all consumers who used Universal's e-commerce websites (Acorn, Bas Bleu, Daedalus Books, Signals, Support Plus, and What on Earth).  Compl. ¶ 1.  Upon placing an order on any of these Universal websites, consumers allegedly were given the option to "Claim Your Free Shipping Refund Now!"  *Id.* ¶ 16.  Beneath that prominent display, consumers were told to submit their e-mail addresses to claim their free shipping offers.  *Id.*  After submitting their e-mail addresses, consumers were actually enrolled into the VIP Insider membership program and subjected to recurring charges of $14.95 after a 7-day "free" trial.  *Id.* ¶¶ 17-18.  At no point did Universal ask consumers who completed this form to re-submit credit card or billing information, compounding the alleged confusion.  *Id.* ¶ 18.  Consumers therefore allegedly had no reason to believe that the free shipping offer would actually subject them to an automatically renewing membership charge. *Id.*  Ms. Burzdak alleged that Universal's conduct misled consumers into making regular payments, and that the conduct seemed intentional given how the renewal terms were obfuscated in a small font with other design elements designed to make the information inconspicuous.  *Id.* ¶ 19.

After Ms. Burzdak filed suit on March 26, 2021, *see* Docket No. 1, Universal moved to compel arbitration and to dismiss and/or stay the case, Docket No. 20.  The Court denied

1   Universal's motion on August 16, 2021, holding that Universal's pop-up screen—the same one

2   displayed in the Complaint—"did not put a reasonably prudent website user on inquiry notice of

3   the Terms of Use and, therefore, Ms. Burzdak cannot be bound by the Terms of Use which

4   contain the arbitration provision."  Docket No. 37 at 14.  Universal filed a timely notice of appeal

5   of that decision, *see* Docket No. 38, and then sought a stay of discovery pending resolution of its

6   appeal, *see* Docket No. 44.  The Court denied the request for a stay, holding that Universal "has

7   made several arguments as to why it is likely to succeed on the merits [of its appeal], or why there

8   are at least serious legal questions, but none is persuasive."  Docket No. 55 at 5.  (Subsequently,

9   but after the parties reached and filed their proposed Settlement and the Ninth Circuit stayed the

10  appeal pending approval of the proposed Settlement, the Supreme Court held that a stay of district

11  court proceedings is required when an interlocutory appeal of an order denying a motion to

12  compel arbitration is filed.  *See Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023).)

13          Ms. Burzdak's complaint alleged two causes of action, one directly under California's

14  Automatic Renewal Law (ARL) and a second one under California's Unfair Competition Law

15  (UCL).  Compl. ¶¶ 37-50.  The UCL claim was premised on a violation of the ARL brought under

16  the UCL's "unlawful" prong.  *Id.* ¶ 46.  On October 6, 2021, Universal filed a motion to dismiss

17  Ms. Burzdak's cause of action under the ARL, arguing that there was no private right of action

18  under that statute.  *See* Docket No. 43.  Ms. Burzdak agreed there was no private right of action

19  under the ARL, and explained that the ARL allegations merely formed the predicate for her claim

20  under the UCL.  *See* Docket No. 45.  The Court granted Defendant's motion, observing that doing

21  so "will have no real impact on the case because Plaintiff will still have a § 17200 claim [*i.e.*, the

22  UCL] based on a violation of § 17600 [*i.e.*, the ARL]."  Docket No. 51 at 1.  Universal did not

23  attempt to dismiss the UCL claim.

24          After the Court denied Universal's motion to compel arbitration, the parties proceeded to

25  discovery, exchanging requests for production of documents and interrogatories.  Docket No. 111

26  ("Salahi Decl.") ¶ 3.  Specifically, Plaintiff issued a set of four interrogatories and twenty-one

27  requests for production of documents in February 2022, followed by a set of eight additional

28  requests for production and four interrogatories in July 2022.  *Id.*  Additionally, Universal issued

fifteen interrogatories and fifteen requests for production to Plaintiff in July 2022.  *Id.*  The parties

exchanged responses and produced materials in response to the other side's discovery requests,

and spent considerable time meeting and conferring about objections.  For example, Plaintiff sent

Universal a six-page letter outlining deficiencies in its production and objections, and then met

and conferred with Universal on an ongoing basis—live and via e-mail correspondence—for

several months.  *Id.*  Indeed, the parties drafted, exchanged, and were on the verge of filing a joint

discovery letter brief in October 2022, but resolved their disagreements at the eleventh hour.  *Id.*

This all occurred within the strictures of the Court's orders limiting the scope of discovery

pending Universal's arbitration appeal.  *Id.*  (Class Counsel attempted to broaden discovery to

advance the Class's interests while the appeal was pending, but was unsuccessful.  *See*, *e.g.*,

Docket Nos. 66, 71.)

In the midst of discovery, the parties began to explore the possibility of engaging in

mediation.  Salahi Decl. ¶ 4.  To prepare for negotiations, Universal provided Class Counsel with

key information about the size of the proposed class as well as the amount in controversy (*i.e.*, the

amounts charged to class members in automatic renewal fees during the relevant time period).  *Id.*

The parties hired JAMS mediator John B. Bates, exchanged mediation briefs in advance of

mediation where they argued the merits and class certification, as well as presented settlement

demands, and then met at a mediation with Mr. Bates on June 29, 2022.  *Id.*  The mediation was

not successful, and the parties believed that mediation was no longer on the table.  *Id.*

After a cool-off period, however, the parties resumed informal settlement negotiations in

approximately September 2022.  Salahi Decl. ¶ 5.  On September 30, 2022, Universal produced

updated data to Ms. Burzdak's counsel about the size of the proposed class and updated

information about the amount in controversy.  *Id.*  The parties began exchanging term sheets in

November 2022, and ultimately executed a Memorandum of Understanding outlining the key

terms of the settlement on January 10, 2023.  *Id.*  The parties then spent several weeks exchanging

drafts of the full settlement agreement, developing a notice plan, and exchanging drafts of the

proposed class notice.  *Id.*  The long-form settlement was executed by all parties on March 9 and

March 10, 2023.  *Id.*

1    On March 27, 2023, Plaintiff filed a motion for preliminary approval of the proposed

2    Settlement.  *See* Docket No. 83.  On April 25, 2023, the Court issued an order requesting

3    supplemental briefing addressing the certification of a settlement class, specifically to address

4    whether there were material differences in litigation risks between class members who enrolled in

5    VIP Insider membership by phone and those who enrolled via website.  *See* Docket No. 92.  This

6    prompted the parties to re-open negotiations over the following weeks.  The parties filed the

7    supplemental materials requested by the Court on June 1, 2023.  *See* Docket No. 98.  In that

8    submission, the parties explained that they had determined an amendment to the proposed

9    Settlement would be appropriate.  Specifically, the parties amended the settlement class definition

10   to exclude individuals who were enrolled via telephone rather than the website; changed the end

11   date of the class definition from the date of preliminary approval to December 31, 2022, thus

12   increasing the value of class members' claims; and adjusted the settlement fund proportionally

13   downward to account for the excluded class members.  *Id.*  Satisfied with these revisions, the

14   Court granted preliminary approval and directed that notice be provided to the Class of the

15   proposed Settlement.  *See* Docket No. 106.

16   **II.    <u>SUMMARY OF THE SETTLEMENT TERMS</u>**

17       The principal terms of the Settlement before the Court are as follows:

18       **A.    Settlement Class**

19       The Settlement Class is defined as "all persons in the State of California who were

20   enrolled online and charged for VIP Insider membership between March 26, 2017 through

21   December 31, 2022, inclusive.  Excluded from the Settlement Class are (a) any Judge or

22   Magistrate presiding over this action and members of their families; (b) Defendant, Defendant's

23   subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents

24   have a controlling interest and its current or former employees, officers and directors; (c) persons

25   who properly execute and file a timely request for exclusion from the Settlement Class; and (d)

26   the legal representatives, successors, and assigns of any such excluded persons.  Persons who

27   were enrolled into VIP Insider membership via telephone are not members of the Settlement

28   Class."  Docket No. 100-1 ("Settlement") ¶ 1.24.

As previously noted, the Settlement Class differs from the Class proposed in the initial Complaint insofar as it narrows the eligible dates of membership to begin with the statute of limitations on March 26, 2017 and to end on December 31, 2022, and also excludes persons who were enrolled via telephone as opposed to online. After filing the Complaint and through discovery, Plaintiff learned that renewal subscriptions could be initiated via telephone, and these individuals were excluded from the Settlement Class following the Court's order requesting supplemental briefing on the issue.

**B.      Settlement Fund**

The Settlement requires Universal to establish a $1.59 million Settlement Fund, out of which class members will be compensated, and, subject to Court approval, attorneys' fees and costs, service awards, and administrative costs will be paid. Settlement ¶ 1.26. If the Settlement is approved, no portion of the Settlement Fund will revert to Universal. *See* Procedural Guidance § 1(g).

**C.      Allocation**

The Settlement adopts an equitable allocation formula by which Class Members will receive a *pro rata* share from the fund proportionate to the amount of automatic renewal fees they have been charged by Universal in connection with VIP Insider membership, and which have not previously been refunded. Settlement ¶ 1.27. The gross average recovery per class member is approximately $48. If the Court ultimately grants Plaintiff's requests for attorneys' fees, costs, service awards, and administrative fees in full, then each Class Member's average net recovery is expected to be approximately $32. Docket No. 100 ("Supp. Salahi Decl.") ¶ 7.

**D.      Prospective Relief**

Universal represents that it has changed its subscription process to comply with California's ARL. Plaintiff takes no position on whether the revised subscription process is compliant. Settlement ¶ 2.2. No person is precluded from bringing suit against Universal to seek injunctive relief if they believe its subscription process does not meet the ARL's requirements, provided they meet all applicable conditions for bringing suit.

**E.      Payment of Settlement Notice and Administrative Costs**

Payment of notice and administrative costs will come from the Settlement Fund. Settlement ¶ 1.22.  The Settlement Administrator, Simpluris, Inc., estimates that notice and administrative costs will be approximately $96,450.  Docket No. 85 at 6.

**F.      Payment of Attorneys' Fees, Costs, and Service Award**

Class Counsel has moved for an award of fees equal to 25% of the Settlement Fund and reimbursement of $5,887.34 in litigation costs.  Docket No. 110 at 5-10.  Defendant retained the right to challenge any fee request submitted by Class Counsel.  Settlement ¶ 8.1.  Should the Court award less than what Class Counsel request, the balance will remain in the Settlement Fund for distribution to Class Members.  *Id.*  Further, Ms. Burzdak has petitioned the Court for a Service Award in the amount of $5,000.  Docket No. 110 at 11.  Should the Court approve a lower award, the balance will remain in the Settlement Fund for distribution to Settlement Class Members.  Settlement ¶ 8.2.

**G.      Release of Liability**

In exchange for the relief described above, Universal will obtain a release of "any and all past and present claims or causes of action, including but not limited to those under California's Automatic Renewal Law, whether known or unknown (including 'Unknown Claims' as defined below), arising from Defendant's automatic renewal practices in connection with VIP Insider membership arising on or before December 31, 2022.  This release excludes claims by persons who were enrolled into VIP Insider membership via telephone."  Settlement ¶ 1.19.  The released "Unknown Claims" are defined in Paragraph 1.29 of the Settlement.  The release is intended to operate no more broadly than the doctrine of claim preclusion would were this an individual suit related to allegedly improper renewal fees.  *See* Procedural Guidance § 1.B.

**III.      THE COURT SHOULD CONFIRM CERTIFICATION OF THE SETTLEMENT CLASS**

The Court preliminarily certified the above-defined Settlement Class for Settlement purposes.  Plaintiff explained in her preliminary approval motion why the Class meets Rule 23's requirements, and the Court agreed.  The notice process has not revealed any information that would disturb that analysis.  Thus, it is clear that class-wide resolution is appropriate for this case,

1  which is premised on a common course of conduct giving rise to common questions of law and

2  fact, as previously explained.

3       The Court should confirm its preliminary finding that the Settlement Class should be

4  certified for settlement purposes.

5  **IV.   <u>NOTICE TO THE CLASS COMPORTED WITH DUE PROCESS</u>**

6       The parties diligently undertook to provide Notice to the Settlement Class in line with the

7  program outlined in the Settlement, which was highly successful.  After preliminary approval,

8  Universal provided the Court-appointed Settlement Administrator, Simpluris, with an Excel file

9  containing Class Member contact information for 32,840 potential class members.  Kamenir Decl.

10 ¶ 5.  Simpluris thereafter sanitized the data to ensure it was properly formatted for distributing the

11 Notice via U.S. mail, and compared the address data against the United States Postal Service

12 ("USPS") National Change of Address Database ("NCOA").  *Id.* ¶ 6.  On the list, Simpluris

13 detected 336 duplicate entries, resulting in a final Class List of 32,504 Class Members.  *Id.* ¶ 7.

14 Of these, mailing addresses were available for 32,381 individuals and e-mail addresses were

15 available for 32,487, of which Simpluris was able to validate 27,730.  *Id.*  Simpluris sent notice

16 via e-mail to 27,730 class members on August 24, 2023, *see id.* ¶ 15 & Ex. D.  Of these, 316

17 emails "bounced back," so e-mail notice was successfully delivered to 27,414 class members.  *Id.*

18 ¶ 15.  Simpluris began its mail notice campaign on September 1, 2023, sending a postcard to

19 5,043 class members who lacked a valid email address.  *Id.* ¶ 17 & Ex. E.  Approximately 158

20 were returned as undeliverable, so Simpluris ran a skip trace and then re-mailed notice to 118

21 class members for whom updated addresses were available.  *Id.* ¶ 17.  Only 40 were deemed

22 undeliverable for lack of an updated address.  None of the 118 updated addresses were

23 undeliverable.  *Id.*  Accordingly, direct notice was provided to 99.7% of Settlement Class

24 Members.  *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (rejecting argument that

25 "notice must actually be received to provide an opportunity to opt out for purposes of due

26 process," and holding that "the appropriate standard is the 'best notice practicable'"); *Edwards v.*

27 *Andrews*, 846 Fed. App'x. 538, 539 (9th Cir. 2021) (holding that direct notice to "at least 75

28 percent of the class" satisfied due process); *Naiman v. Total Merchant Servs., Inc.*, No. 17-cv-

1   03806, 2019 WL 13194603, at *8 (N.D. Cal. Apr. 16, 2019) (holding that notice to "only eighty-

2   three percent of the Settlement Class members" satisfied due process); *Mendez v. C-Two Grp.,*

3   *Inc.*, No. 13-cv-05914-HSG, 2017 WL 2861118, at *4 (N.D. Cal. July 5, 2017) (granting final

4   approval where direct notice was provided to 88% of class members).

5           In addition to direct notice via mail and e-mail, Simpluris established a Settlement

6   Website with a summary of the Settlement; important dates and deadlines, such as the Objection

7   and Exclusion Deadline and the Final Approval Hearing date; answers to frequently-asked

8   questions; and the Long Form Notice of Class Action Settlement.  Kamenir Decl. ¶ 10.  The

9   website also contains relevant case documents, including the Class Action Complaint; Amended

10  Class Action Settlement Agreement; Plaintiff's Motion for and Memorandum in Support of

11  Preliminary Approval; Order Granting Plaintiff's Motion for Preliminary Approval of Class

12  Action Settlement; and Plaintiff's Motion in Support of Attorneys' Fees, Costs and Service

13  Award.  Kamenir Decl. ¶ 11.  Class Counsel will also ask Simpluris to publish this final approval

14  motion on the Settlement Website promptly after it is filed.

15          As the Court already found, the Notice documents provided to Class Members clearly and

16  plainly describe their rights under the Settlement, and informed them of what actions they might

17  take.  Docket No. 106 ¶¶ 10-11.  The Court should find that the Notice Program, as implemented,

18  provided the Settlement Class with the notice required by Due Process.

19  **V.      THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL**

20          Rule 23(e)(2) requires the Court to find that the settlement is "fair, reasonable, and

21  adequate" after considering whether: (A) the class representative and class counsel have

22  adequately represented the class; (B) the settlement was negotiated at arm's length; (C) the relief

23  provided for the class is adequate; and (D) the settlement treats class members equitably relative

24  to each other. Fed. R. Civ. P. 23(e)(2).  These Rule-based factors are sometimes considered

25  through the lens of the Ninth Circuit's 8-factor approval test, which predates the current version

26  of the Rule and overlaps with it substantially.  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d

27  566, 575 (9th Cir. 2004).  The eight-factors are: "(1) the strength of the plaintiffs' case; (2) the

28  risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining

class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Id.* These factors are discussed below within the framework established by Rule 23(e). Further, because of the pre-certification posture of this case, the factors identified by the Ninth Circuit in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011). Because the *Bluetooth* factors are relevant to one of the procedural concerns highlighted by Rule 23(e), the two tests are discussed together. As Plaintiff explained in her motion for preliminary approval, this Settlement easily clears the bar for pre-certification settlements. No objections suggesting otherwise have been filed, and no new information has come to light even hinting that the Settlement is unfair or inadequate.

A. **Ms. Burzdak and Proposed Class Counsel Adequately Represented the Class**

The first Rule 23(e) factor concerns adequate representation. The focus of this analysis is "on the actual performance of counsel acting on behalf of the class" throughout the litigation and in settlement negotiations. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment; *see Gumm v. Ford*, No. 5:15-cv-41-MTT, 2019 WL 479506 at *3 (M.D. Ga. Jan. 17, 2019). This factor overlaps significantly with the adequacy requirement of Rule 23(e). *See O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL 1437101, at *6 (N.D. Cal. Mar. 29, 2019). In considering this factor, the court should further examine whether plaintiff and class counsel had adequate information to negotiate a class-wide settlement. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment. Ultimately, this factor is generally satisfied where the named plaintiff and class counsel "have prosecuted the case with diligence and success." *In re Snap Inc. Securities Litig.*, No. 2:17-CV-0367-SVW, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021).

Here, counsel had the basic information necessary to craft a fair settlement. Class Counsel's pre-suit investigation revealed the relevant facts regarding the enrollment process for VIP Insider membership. Additionally, Universal provided informal discovery to help counsel understand the proposed class's potential recovery, should the case proceed to trial. *See Linney v.*

1   *Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("In the context of class action

2   settlements, formal discovery is not a necessary ticket to the bargaining table where the parties

3   have sufficient information to make an informed decision about settlement.") (citation and

4   internal quotations omitted).  During negotiations, Universal provided information about the class

5   size and amount in controversy as of August 31, 2022.  Supp. Salahi Decl. ¶ 7; *see also*

6   Settlement ¶ 7.2.  After the Court requested supplemental briefing regarding the initial proposed

7   Settlement, Defendant supplemented its data production to facilitate revisions to the Settlement,

8   including the adjusted class size and amount in controversy for the revised class definition.  Supp.

9   Salahi Decl. ¶¶ 5-7.  All in all, the Settlement returns approximately 38.72% of class members'

10  alleged losses, an average gross recovery of $48 per class member, or $32 if Class Counsel's

11  requests for attorneys' fees, costs, and service award are granted.  *Id.* ¶ 7.  That is an excellent

12  recovery compared to similar automatic renewal cases.  *See, e.g.*, *Kissel*, 2017 WL 10560526, at

13  *8 (settlement obtained 6% recovery); *Nichols v. Noom, Inc.*, 20-cv-3677-KHP, 2022 WL

14  2705354, at *10 (S.D.N.Y. July 12, 2022) (settlement obtained 27.5% recovery).

15
16  **B.      The Settlement Was Negotiated at Arm's Length and There Are No Indicia of
          Collusion**

17          The second Rule 23(e) factor asks whether the proposed settlement was negotiated at

18  arm's length.  "This inquiry aims to root out settlements that may benefit the plaintiffs' lawyers at

19  the class's expense[]."  Newberg & Rubenstein on Class Actions § 13:50.  The concern, which is

20  also embodied in this Circuit's *Bluetooth* factors, is that "the defendant will dangle such a healthy

21  fee in front of the plaintiffs' lawyer that they will settle the class's claims at a discount."  *See id.*;

22  *see also Bluetooth*, 654 F.3d at 946 ("Prior to formal class certification, there is an even greater

23  potential for a breach of fiduciary duty owed the class during settlement.  Accordingly, such

24  agreements must withstand an even higher level of scrutiny for evidence of collusion or other

25  conflicts of interest than is ordinarily required under Rule 23(e)").

26          Here, both sides were represented by counsel with significant class action experience.

27  Docket No. 84 at ¶ 12.  Additionally, the parties enlisted the assistance of John Bates of JAMS,

28  who ordered the parties to prepare mediation briefs and who supervised the parties' first attempt

1   at mediation. *Id.* ¶ 5. Although that mediation was not successful, the parties later resumed

2   discussions along the same contours as during mediation with Mr. Bates through their respective

3   attorneys and through a contentious process that lasted several months. *Id.* ¶ 6.

4       These lengthy negotiations demonstrate that the proposed Settlement is the product of

5   arm's-length negotiations. *See Cmty. Resources for Indep. Living v. Mobility Works of Cal., LLC*,

6   533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) ("serious, informed, non-collusive negotiations"

7   taking place over an "extended" period weighed in favor of settlement approval) (citation

8   omitted); *Vianu v. AT&T Mobility LLC*, No. 19-CV-03602-LB, 2022 WL 16823044, at *7 (N.D.

9   Cal. Nov. 8, 2022) (finding that negotiations aided by an experienced mediator weighed in favor

10  of settlement approval).

11      Moreover, the Settlement bears none of the "subtle signs of implicit collusion" that the

12  Ninth Circuit has cautioned district courts to guard against. *Roes, 1-2 v. SFBC Mgmt., LLC*, 944

13  F.3d 1035, 1049-50 (9th Cir. 2019). These factors, commonly called the *Bluetooth* factors, are:

14  (1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties

15  negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a

16  certain fee request by class counsel); and (3) when the parties create a reverter that returns

17  unclaimed [funds] to the defendant. *Bluetooth*, 654 F.3d at 947.[1]

18      None of those factors appear here. First, Class Counsel asked the Court to approve a fee

19  request that amounts to 25% of the fund. Docket No. 110 at 5-10. This 25% figure is the

20  "benchmark" fee award in this Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047

21  (9th Cir. 2002). And, of course, this Court will need to determine what fee is "reasonable" to

22  award under the circumstances. *See Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).

23  Similar and larger proposed awards have been found not to be indicative of collusion. *See, e.g.*,

24  *Luz Bautista-Perez v. Juul Labs, Inc.*, No. 20-CV-01613-HSG, 2022 WL 307942, at *6 (N.D. Cal.

25

26  [1]    Later cases have also indicated that "large incentive payments seemingly untethered from
    service to the class" also may be evidence of collusion. *Roes, 1-2*, 944 F.3d at 1049; *see Luz*
27  *Bautista-Perez v. Juul Labs, Inc.*, No. 20-CV-01613-HSG, 2022 WL 307942, at *6-7 (N.D. Cal.
    Feb. 2, 2022). The modest size of the service award contemplated by the Settlement is discussed
28  in conjunction with another of the Rule 23(e) factors, concerning the equitable distribution of
    settlement proceeds. *See infra* § V.D.

1  Feb. 2, 2022) ("And while the Settlement Agreement authorizes Plaintiffs' counsel to request up

2  to $750,000 in attorneys' fees, which is about 42% of the gross settlement fund, it does not

3  necessarily contemplate a disproportionate cash allocation between counsel and the class"); *Cottle*

4  *v. Plaid Inc.*, 340 F.R.D. 356, 378 (N.D. Cal. 2021) (proposed 25% award was "presumptively

5  reasonable" and not a disproportionate fee award); *In re LinkedIn User Priv. Litig.*, 309 F.R.D.

6  573, 589 (N.D. Cal. 2015) (finding proposal to seek fees and costs equal to 32% of settlement not

7  disproportionate).

8         Second, there is no clear sailing agreement here.  Although Universal ultimately did not

9  challenge Class Counsel's fee request, it retained its right to do so in the Settlement.  *See*

10 Settlement ¶ 8.1 ("Defendant may challenge the amounts requested.").  To be sure, there were

11 absolutely no discussions concerning Defendant's opposition to the fee request prior to, during, or

12 after the mediation or other settlement discussions, and Defendant's lack of opposition was not an

13 explicit or implicit understanding of the parties.

14        Third, there is no reverter or kicker clause.  All class members will be issued their

15 payments without any need to submit a claim.  If any check goes uncashed, remaining funds will

16 be redistributed to the class unless it is not economically feasible to do so, at which point left over

17 funds may be given to a *cy pres* beneficiary subject to Court approval.  Settlement ¶ 2.1(f).

18 Moreover, should the Court award less in fees, costs, or service awards than what Ms. Burzdak

19 and proposed Settlement Class Counsel seek, the difference will remain in the Settlement Fund

20 for distribution to Class Members.  Settlement ¶ 8.1.  *See also* Procedural Guidance § 1(g)

21 (directing litigants to discuss at preliminary approval whether the proposed settlement contains

22 any provision for reversion of funds to the defendant).

23        Thus, the terms of the Settlement contain none of the subtle signs of collusion that the

24 Ninth Circuit has cautioned against, confirming that the Settlement was negotiated at arm's

25 length.

26     **C.     The Relief Obtained Is Meaningful and Significant Compared to Similar**
               **Settlements**

27

28     The next Rule 23(e) factor directs the Court to consider whether "the relief provided for

the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Similarly, the *Churchill* factors include the amount offered in settlement, the strength of the plaintiff's case, and the risks and expense of further litigation, including the risk of maintaining class status through judgment.  *See Churchill*, 361 F.3d at 575.  The relief secured by the Settlement is more than adequate under the relevant tests.

To put it simply, the relief provided by the Settlement is outstanding: the $1.59 million settlement returns 38.72% of Class Members' losses.  The relief secured by the Settlement is exemplary in light of the costs and risks of future litigation, and the delay that would be caused by any trial or appeal.  Indeed, Universal's pending appeal of the Court's order denying its motion to compel arbitration had already delayed class discovery for over a year.  (And even non-class discovery would have had to stop pending appeal, following the Supreme Court's intervening decision in *Coinbase*.)  If Universal's appeal were successful, and the Ninth Circuit held that individual arbitration was required, then the class would receive nothing at the end of the day. *See Harrison v. Bank of Am. Corp.*, No. 19-CV-00316-LB, 2021 WL 5507175, at *3 (N.D. Cal. Nov. 24, 2021) (approving settlement that returned approximately 20% of total damages); *see also Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.").

While Ms. Burzdak is confident in her ability to prevail on the merits of an ARL claim, both the arbitration appeal and class certification would have posed some risk to the class.  First, the Ninth Circuit might have held that the terms of service were in fact sufficiently conspicuous to create a valid arbitration agreement.  Not only would that have ended the litigation and the possibility of a class recovery, but it would also have carried negative consequences on the merits. If the link to the terms of service was sufficiently conspicuous, then why not also the terms of the automatic renewal offer, which appeared in the same fine print as the link to the terms of service?

*Cf.* Docket No. 37 at 7 n.4 (noting that "the inquiry notice standard [for purposes of whether an arbitration agreement was formed] does require the Court to consider whether the Terms of Use were clear and conspicuous as that term is used by the California Automatic Renewal Law"). Second, at class certification, Universal would have argued, among other things, that significant variations in class member experiences precluded certification.  Third, in addition to its arguments about compliance with the ARL, Universal intended to argue that some class members received benefits in the form of rewards points or free shipping, precluding restitution on the merits.  *See*, *e.g.*, *Turnier v. Bed Bath & Beyond Inc.*, No. 3:20-CV-00288-L-MSB, 2021 WL 4209473, at *2 (S.D. Cal. Sept. 16, 2021) (granting motion to dismiss ARL claim where plaintiff who obtained and used benefits of subscription was entitled to restitution of associated renewal fees).  Fourth, Universal also intended to invoke a "good faith" defense from liability.  *See*, *e.g.*, *Roz v. Nestle Waters N. Am., Inc.*, No. 2:16-CV-4418-SVW-JEM, 2017 WL 6942661, at *3 (C.D. Cal. Dec. 6, 2017) ("Even assuming that [defendant] technically violated Section 17600 *et seq.*, [defendant] could be protected from civil liability because it complied in good faith, or substantially complied, with the statutory scheme.").  While Ms. Burzdak had both legal and factual arguments to make on each of these issues, she and Class Counsel recognize that several of these anticipated defenses introduced real risk to her and members of the Settlement Class.  Add to these risks the fact that even if the Settlement Class were to prevail, any success would not come for years, as either party would also be likely to appeal an adverse judgment.

Balanced against these risks, and the attendant delay associated with litigating a case through trial and appeal, the recovery secured by the Settlement is excellent.  This is all the more so because Class Members will not have to do anything in order to obtain relief from the Settlement.  The Settlement provides for checks to be automatically sent to each Class Member's last known address without any requirement to submit a claim form.  *See Taafua v. Quantum Glob. Techs., LLC*, No. 18-CV-06602-VKD, 2020 WL 4732342, at *7 (N.D. Cal. Aug. 14, 2020) ("Considering the potential risks and costs of proceeding to trial, as well as the relative ease with which class members may receive their funds, at this stage the Court is satisfied that the settlement consideration is adequate.").

1    Thus, the relief secured by the Settlement is fair, reasonable, and adequate, supporting

2    final approval.

3    **D.    The Settlement Treats Class Members Equitably Relative to Each Other**

4    The final Rule 23(e) factor concerns whether the proposed settlement treats class members

5    equitably relative to each other.  The instant Settlement easily passes this test, as Settlement Class

6    Members' recovery is calibrated to how much they were charged in automatic renewal fees.  *See*

7    *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2022 WL 17409738, at *5 (N.D. Cal.

8    Dec. 2, 2022) (finding at preliminary approval that a settlement which contained tiered allocation

9    plan depending on class member injuries "appears to treat class members equitably relative to

10   each other."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is

11   reasonable to allocate the settlement funds to class members based on the extent of their injuries

12   or the strength of their claims on the merits.").  This type of *pro rata* allocation is fair and

13   reasonable.

14   Finally, while the Settlement proposes to issue a service award to the named Plaintiff, Ms.

15   Burzdak, that does not automatically indicate inequitable treatment.  Such awards are

16   commonplace, and serve to recognize the valuable efforts of a class representative, without which

17   this type of representative litigation, class settlement could not even exist.  The basis for this

18   award is explained in Ms. Burzdak's motion for a service award, and is fully justified under

19   governing law.  *See* Docket No. 110 at 11.  Ms. Burzdak petitioned the Court for an award of

20   $5,000, which represents 0.31% of the Settlement Fund, and is presumptively reasonable.  *See In*

21   *re Facebook Biometric Info. Privacy Litig.*, No. 21-15553, 2022 WL 822923, at *2 (9th Cir. Mar.

22   17, 2022) (noting that the Ninth Circuit "regularly uphold[s] incentive awards" of $5,000); *In re*

23   *Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) (noting

24   that a $5,000 award is "presumptively reasonable").  Thus, this additional allocation of funds is

25   equitable.  *See Evans v. Zions Bancorporation, N.A.*, No. 2:17-CV-01123 WBS DB, 2022 WL

26   16815301, at *5 (E.D. Cal. Nov. 8, 2022) (finding that $5,000 service awards comported with

27   equitable treatment of class members); *see also Juarez v. Soc. Fin., Inc.*, No. 20-cv-03386-HSG,

28   2022 WL 17722382, at *6 (N.D. Cal. Dec. 15, 2022) (noting that settlement's provision for an

incentive award did not indicate preferential treatment because any such award would need to be supported with evidence).

### E.    There Are No Objections

No Class Member objected to the terms of the Settlement, the request for attorneys' fees, or Ms. Burzdak's request for a service award.

## VI.    <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court enter an order confirming certification of the Settlement Class for settlement purposes, confirm the appointment of Karen Burzdak to represent the Settlement Class, and Rafey S. Balabanian and Yaman Salahi of Edelson PC as Class Counsel, finally approving the Settlement, ordering that the Settlement Fund be distributed in accordance with the Settlement, and entering a final judgment in this matter.


Date: November 16, 2023                              By: */s/ Yaman Salahi*

Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Yaman Salahi (SBN 288752)
ysalahi@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Attorneys for Plaintiff Karen Burzdak*
*and the Settlement Class*

### ATTESTATION OF ELECTRONIC SIGNATURE

I hereby attest that pursuant to N.D. Cal. Civil L.R. 5-1(h)(3), I have obtained the authorization from the above signatory representing Plaintiff and the Settlement Class to file the above-referenced document, and that the above signatory concurs in the filing's content.

*/s/ Rafey S. Balabanian*